687 P.2d 1040

**Anthony Gene MARCH,**
**Plaintiff-Appellant,**

v.

**MOUNTAIN STATES MUTUAL**
**CASUALTY COMPANY,**
**Defendant-Appellee.**

**No. 15222.**

Supreme Court of New Mexico.

Sept. 24, 1984.

Bruce P. Moore, Moscow, Idaho, James I. Bartholomew, Albuquerque, for appellant.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Benjamin Silva, Jr., Albuquerque, for appellee.

## OPINION

RIORDAN, Justice.

Plaintiff Anthony Gene March (March) brought a declaratory judgment action against defendant Mountain States Mutual Casualty Company (Mountain States) to determine the existence and extent of coverage of an underinsured motorist policy benefit with respect to a particular automobile accident. Mountain States raised several defenses in its answer, including claims that March had violated express policy provisions and had prejudiced the insurer's subrogation rights. After a bench trial, the district court entered judgment in favor of Mountain States. March appeals. We affirm.

The issue we address is whether the district court erred in concluding that March's release and settlement with the alleged tortfeasor's insurance company without the consent or knowledge of Mountain States relieved Mountain States of its obligations to March.

Several years prior to the declaratory judgment action, March purchased an automobile insurance policy from Mountain States. The policy was in effect at the time of the accident. It included a benefit which provided for payments to a maximum of $50,000 for damages caused by an uninsured or *under*insured motorist. Upon payment of such benefit, the policy required that Mountain States be subrogated to the rights of March against any parties who possibly would be liable. The policy required the following obligations of March as an insured: to give Mountain States prompt notice of an accident, to make no settlement with third parties without the consent of Mountain States, and to do nothing to prejudice or defeat the subrogation rights of Mountain States.

On October 24, 1979, March was involved in a collision with a vehicle driven by Wanda Brazell (Brazell). March claims that the negligent driving of Brazell was the sole proximate cause of the collision and of his damages, which he claims exceed $75,000. On October 26, 1981, March presented a damage claim to the Travelers Insurance Company (Travelers), the liability insurance carrier for Brazell. On January 27, 1982, March settled this claim without notice to or the consent of Mountain States by accepting Travelers' payment of $25,000, Brazell's policy limit. In return, March executed an instrument releasing Brazell and Travelers from any further liability for personal injury or property damages arising from the October 24, 1979 automobile accident. The settlement was contingent upon his execution of this general release. Prior to April 16, 1982, Mountain States had neither notice nor knowledge of the accident, settlement negotiations, or settlement between March and Travelers. Mountain States was not a party to the settlement negotiations.

On April 16, 1982, nearly three months after settling with Travelers, March submitted to Mountain States a claim for $50,000 in damages (his policy limit) under the *under*insured policy provisions. The claim notified Mountain States of the accident, the damages, the fact that Brazell was underinsured, and the settlement with Travelers. Mountain States subsequently denied coverage and all liability under the policy.

The parties agreed to submit the dispute to arbitration under the policy guidelines, but could not agree as to whether the arbitration should include legal (policy coverage) questions as well as factual issues. March filed a declaratory judgment action on October 15, 1982, seeking a determination of policy coverage, benefit amounts, and the scope of arbitration. On October

17, 1983, the district court entered judgment in favor of Mountain States dismissing the case, finding that, as a matter of law, March's settlement and resulting destruction of Mountain States' subrogation rights breached several express policy provisions and terminated the obligations of the insurer.

The essential facts are not in dispute. We therefore restrict our review to the correctness of the trial court's legal conclusions. *Martinez v. Martinez*, 93 N.M. 673, 604 P.2d 366 (1979); *Bowlin's, Inc. v. Ramsey Oil Co.*, 99 N.M. 660, 662 P.2d 661 (Ct.App.), *cert. denied*, 99 N.M. 644, 662 P.2d 645 (1983). March contends that neither March's destruction of Mountain States' possible subrogation rights nor his failure to obtain Mountain States' consent to the Travelers' settlement terminated the policy obligation of Mountain States with respect to the October 24, 1979 accident. We disagree.

In New Mexico, the principles of contract law as applied to the particular terms of an insurance policy determine the obligations of a liability insurer. *Farmers Alliance Mutual Insurance Co.. v. Bakke*, 619 F.2d 885 (10th Cir.1980); *Safeco Insurance Co. of America v. McKenna*, 90 N.M. 516, 565 P.2d 1033 (1977); *Atlas Assurance Co. v. General Builders, Inc.*, 93 N.M. 398, 600 P.2d 850 (Ct.App.1979). Exclusionary policy provisions will be enforced so long as their meaning is clear and they do not conflict with public policy as embodied by express statutory language or by legislative intent. *Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. 327, 533 P.2d 100 (1975).

In the present case, the Mountain States policy expressly provides for both a right of subrogation in Mountain States and also an exclusion where the insured settles a claim without the insurer's consent. The Mountain States policy provides in pertinent part:

**WE WILL NOT COVER—EXCLUSIONS**

This insurance does not apply to:

1. Any claim settled without our consent.

In addition to this specific exclusion, the overall policy clearly delineates the obligations of the insured as to notice of an accident or lawsuit, settlement, and subrogation rights in the following provisions:

**DUTIES AFTER ACCIDENT OR LOSS**

We must be notified *promptly* of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

A person seeking any coverage must:
1. Cooperate with us in the investigation, *settlement* or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

\* \* \* \* \* \*

**OUR RIGHT TO RECOVER PAYMENT**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. *That person shall do* whatever is necessary to enable us to exercise our rights and shall do *nothing after loss to prejudice them*. (Emphasis added.)

March argues that either Mountain States has no subrogation rights in this case or that March's destruction of those rights through the Travelers settlement does not affect the policy obligation of Mountain States to pay March's claim. Focusing on the "[i]f we make a payment" language of the subrogation provision, March apparently argues that because it paid no damages to March, Mountain States possessed no subrogation rights. However, an insured's settlement with and release of a tortfeasor violates this type of subrogation provision whether the insured's action occurs before or after the insurer's payment of loss. 3 R. Long, *The Law of Liability Insurance* § 23.14 (1983). Although the subrogation right is not fixed

until a loss payment is made, a contingent subrogation right in favor of the insurer arises when the loss occurs. *Id.* at § 23.01.

■■ Moreover, New Mexico law clearly establishes that an insured's settlement with and/or release of a tortfeasor, the tortfeasor's estate, or the tortfeasor's insurance carrier in violation of express policy provisions destroys the subrogation rights of the insurer. *Jacobson v. State Farm Mutual Automobile Insurance Co.*, 83 N.M. 280, 491 P.2d 168 (1971); *Motto v. State Farm Mutual Automobile Insurance Co.*, 81 N.M. 35, 462 P.2d 620 (1969); *Armijo v. Foundation Reserve Insurance Co.*, 75 N.M. 592, 408 P.2d 750 (1965). Each of the latter cases involved a subrogation provision similar to the clause at issue, including the condition that the insured do nothing after loss to prejudice the insurer's subrogation rights. Thus, through the Travelers settlement, March clearly violated express policy provisions and destroyed the subrogation rights of Mountain States. As this Court stated in *Armijo:*

> We think it is well established that if an insured, without the knowledge of his insurer, effectively releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurance company, he destroys any right of subrogation the insurer may have against the wrongdoer and is, thereafter, precluded from a recovery from his insurer under the policy.

75 N.M. at 596, 408 P.2d at 752 (1965) (citations omitted). *See Jacobson v. State Farm Mutual Automobile Insurance Co.; Motto v. State Farm Mutual Automobile Insurance Co.* Moreover, March executed the Travelers settlement without the consent of Mountain States, and the consent provision of the policy specifically excludes his subsequent claim on Mountain States.

■ March claims that the clear line of New Mexico precedent precluding recovery under these circumstances should not apply when the insured is seeking to recover on an *under*insurance policy. This specific issue is one of first impression in New Mexi-

co. The question of the validity of the consent provision is necessarily intertwined with the propriety of enforcing protection of subrogation rights in the underinsurance situation. The purpose of a consent-to-settle clause is to protect the insurer's subrogation rights. *Benson v. Farmers Insurance Co.*, 227 Kan. 833, 610 P.2d 605 (1980); *United States Fidelity & Guaranty Co. v. Hillman*, 367 So.2d 914 (Miss. 1979). March also raises public policy concerns, reflected by uninsured motorist coverage statutes, as weighing against enforcement of subrogation rights and consent-to-settle provisions. Most courts confronting the question concentrate on whether the relevant uninsured motorist statutes authorize subrogation rights. *Compare Benson v. Farmers Insurance Co.* (consent provision intended to protect insurer's statutory subrogation right is valid) *and United States Fidelity & Guaranty Co. v. Hillman* (noting that the weight of authority upholds consent provisions where subrogation rights are statutory) *with Niemann v. Travelers Insurance Co.*, 368 So.2d 1003 (La.1979) (where uninsured motorist statutes provide for only limited reimbursement rights rather than for subrogation and neither explicitly nor implicitly authorize consent provisions which, in effect, serve to block statutorily mandated uninsured motorist coverage, such consent provisions are invalid). *See generally* Annot., 18 A.L.R. 4th 249, §§ 7, 8 (1982).

Although New Mexico insurance statutes do not specifically provide for subrogation rights, this Court has consistently recognized such rights as legitimate contractual matters and has implicitly authorized the use of consent provisions as a device to protect those rights. *Jacobson v. State Farm Mutual Automobile Insurance Co.; Campbell v. Benson*, 97 N.M. 147, 637 P.2d 578 (Ct.App.1981). In the face of this recognition, cases cited by March regarding equitable considerations of subrogation, or subrogation in situations not involving an insurance contract or breach of express policy provisions by an insured, are inapplicable.

■ March argues that consent requirements should not be allowed to impede assertion of an underinsurance claim, citing *Hebert v. Green*, 311 So.2d 223 (La.1975), and *Niemann*. We agree that the uninsured motorist statutes are designed to protect the insured from the uninsured or underinsured motorist, not to protect the insurance company from its own insured. *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct.App.1978). However, "[c]onstruing an insurance contract accurately and giving it the effect which its language clearly commands is not *ipso facto* a breach of public policy merely because it disappoints the victim of an uninsured motorist." *Tuthill v. State Farm Insurance Co.*, 19 Ill. App.3d 491, 498, 311 N.E.2d 770, 776 (1974) (citation omitted). In response to the insured's argument in *Tuthill* that the consent provision in effect gives the insurer the power to control litigation by forcing the insured to proceed to trial when the insurer refuses to consent to a settlement, the court noted that the consent provision is not designed to control the insured's access to the courts, but rather to protect the insurer's subrogation rights. *Id.* at 497, 311 N.E.2d at 775. Moreover, the court pointed out that the insured is protected by the generally-accepted notion that an insurer's arbitrary and unreasonable withholding of consent would constitute a waiver of the consent requirement. *Id.* The court went on to hold that no such waiver was possible where the insured never even gave the insurer an opportunity to consent to a settlement which completely foreclosed its subrogation rights.

In *Niemann*, the Louisiana Supreme Court differentiates between uninsured and *under*insured motorist situations, noting that the insurer is obliged to pay only those damages which exceed the underinsured tortfeasor's policy limits and which are within the uninsured motorist policy limits. 368 So.2d at 1007 n. 6. The court added that both subrogation and consent clauses impede an insured's assertion of "that part of his damage claim (against the tortfeasor's liability insurer) which the carrier in writing *under*insured motorist cov-

erage effectively acknowledged would be an independent or supplemental right of recovery of its insured." *Id.* at 1007–1008. Finally, the court reasoned that an insured has a legitimate motive to release an underinsured tortfeasor and his insurer in exchange for the underinsured's policy limits or an acceptable portion thereof, "proceeds which [the statute and the carrier] contemplate will be available to the insured in addition to the [uninsured motorist policy] proceeds." *Id.* at 1008.

Despite its discussion of public policy, the *Niemann* analysis focuses on the Louisiana statutory extension of uninsured motorist coverage to the underinsured situation and on statutorily limited subrogation rights. The court specifically states: "we find it inadvisable and unnecessary to decide this case on considerations of public policy." *Id.* at 1007. By contrast, we find that the well established contractual nature of subrogation rights in New Mexico logically justifies the use of protective consent provisions, even though our uninsured motorist statutes do not expressly allow such rights or provisions. In this case, March's action has completely obliterated Mountain States' opportunity to seek reimbursement from Brazell.

■ Therefore, we hold that the subrogation and consent provisions of the Mountain States policy are valid in the *under*insured situation. We further hold that March's settlement and release without his insurer's consent destroyed the subrogation rights of Mountain States, violated express consent and notice policy provisions as outlined above, and triggered the exclusionary clause of the consent provision, terminating the obligations of Mountain States.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and WALTERS, J., concur.