Karen J. YARBROUGH, Individually, and as the Surviving Heir of Kathryn J. Yarbrough, Deceased, Plaintiff,

v.

STATE FARM INSURANCE COMPANY, Defendant.

No. Civ 89–0050 JC.

United States District Court,
D. New Mexico.

Jan. 8, 1990.

Wesley Reid Bobbitt, Wesley Reid Bobbitt, P.C., Albuquerque, N.M., for plaintiff.

Alice Tomlinson Lorenz, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION

CONWAY, District Judge.

THIS MATTER is before the Court on the defendant's Motion for Summary Judgment, filed June 30, 1989. Having conducted a hearing on the motion on December 15, 1989, and having reviewed the memoranda of the parties and the applicable law, the Court has found that the motion is not well-taken and entered its Order so stating on Friday, January 5, 1990. This Memorandum Opinion sets forth the Court's reasoning.

The issue presented is whether the holder of an uninsured/underinsured motorist insurance policy breaches the terms of the policy, thereby invalidating the underlying insurance contract, by settling her claims with co-tortfeasors other than the uninsured motorist tortfeasor.

The facts of this case are unusual. On August 10, 1985, Kathryn Yarbrough, the plaintiff's daughter, was a passenger on a moped motorcycle driven by Mr. Mark Maris. Yarbrough and Maris entered the intersection of West Campbell Road and Nantucket Drive in Richardson, Texas as the traffic signal turned yellow. A car driven by Mr. Osei–Kusi Appiah entered the intersection at approximately the same time and collided with the moped. Kathryn Yarbrough was fatally injured.

Karen Yarbrough filed suit against Mr. Appiah in 1986. That lawsuit was settled for "policy limits" of $15,025.00 in August of 1987. As part of that settlement, Karen Yarbrough executed a full release of Mr. Appiah and the National County Mutual Fire Insurance Company.

Karen Yarbrough also sued Peugeot Motors of America and Cycles Peugeot U.S.A., Inc., the manufacturers of the moped. That lawsuit was settled and a Full, Final and Complete Release was executed on May 1, 1989.

Karen Yarbrough and Mrs. Poole, her mother, also made a claim for uninsured motorist benefits pursuant to a policy issued to Mrs. Poole and her aunt, Mrs. Freburg, by the United States Fidelity and Guaranty Company ("USF & G"). That claim was settled for "policy limits" as well on September 28, 1987.

The current lawsuit was initiated on January 11, 1989 by Karen Yarbrough in an effort to recover benefits allegedly due her pursuant to three separate uninsured/underinsured motorist policies issued by the defendant State Farm Insurance Company. In its defense, State Farm urges that the plaintiff breached the terms of her policies by failing to notify them of the accident within a reasonable period of time, (State Farm argues that it did not receive notice until December 1987), and by negotiating settlements with other tortfeasors involved in the accident.

The language at issue in the policies provided by State Farm reads as follows: under "Reporting a Claim—Insured's Duties":

"1. Notice to us of an Accident or Loss. The insured must give us or one of our agents written notice of the accident or loss as soon as reasonably possible. The notice must give us:

(a) your name; and

(b) the names and addresses of all persons involved; and

(c) The hour, date, place and facts of the accident or *loss;* and

(d) The names and addresses of witnesses ..."

All three of the insurance policies identified in Plaintiff's Complaint and upon which she bases her claim provide under "Reporting a claim—Insured's Duties":

4. Other Duties Under Medical Payments, Uninsured and Unknown Motorists, Death, Dismemberment and Loss of Sight, Total Disability and Loss of Earnings Coverages.

The person making the claim also shall:

(a) Give us all the details about the death, injury, treatment and other information we need to determine the amount payable;

. . . . .

(c) under the uninsured and unknown motorist coverage:

. . . . .

(3) send us at once a copy of all suit papers if the person sues the party liable for the accident or damages;

. . . . .

(5) after notice of claim, if we ask:

(a) Do what is needed to preserve his or her right to recover damages from any person or organization claimed to be responsible for the bodily injury or property damage.

All three of the insurance policies identified in Plaintiff's complaint and upon which she bases her claim provide under "Reporting a Claim—Insured's Duties":

5. Insured's Duty to Cooperate with us.

The insured shall cooperate with us . . ." All three of the insurance policies identified in Plaintiff's Complaint and upon which she bases her claim provide under "SECTION III—UNINSURED AND UNKNOWN MOTORIST COVERAGE U":

"When Coverage U Does Not Apply THERE IS NO COVERAGE:

1. FOR ANY INSURED WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY PERSON OR ORGANIZATION WHO MAY BE LIABLE FOR THE BODILY INJURY.

All three of the insurance policies identified in Plaintiff's Complaint and upon which she bases her claim provide under "CONDITIONS":

"3. Our Right to Recover our Payments.

(b) Under uninsured and unknown motorists and loss of earnings coverages:

(1) We are subrogated to the extent of our payments to the proceeds of any settlement the injured person recovers from any party liable for the bodily injury . . ."

## PART I

■ In New Mexico, insurance policies are interpreted by resort to basic principles of contract law. *March v. Mountain States Mutual Casualty Co.*, 101 N.M. 689, 687 P.2d 1040 (1984). Exclusionary policy language will be enforced so long as its meaning is clear and it does not conflict with public policy as embodied by express statutory language or by legislative intent. *Id.* at 1042; *Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. 327, 533 P.2d 100 (1975).

■ In *March*, the New Mexico Supreme Court confirmed the validity of exclusionary language and consent-to-settle provisions in uninsured/underinsured motorists' policies which require that notice of an accident be given to the insuror, and that the policy holder make no settlement with the alleged tortfeasor without the consent of the insuror. The issue that the Court addressed in *March* was whether the plaintiff's release and settlement with the alleged tortfeasor's insurance company without the consent or knowledge of his own insurance provider, relieved the insuror of its obligation to the insured. 101 N.M. at 690, 687 P.2d 1040. The Court held that the release and settlement by the plaintiff violated the exclusion provisions of the policy because it destroyed the subrogation rights of the insuror, rights which the consent-to-settle clause in the policy was specifically designed to protect. Applying the law of the state of New Mexico, it is therefore clear that any unconsented to release of an alleged tortfeasor by a putative plaintiff operates to void the provisions of any uninsured/underinsured motorist policy as to that tortfeasor. However, this is not the case now before the Court.

■ Here, Ms. Yarbrough's attorney has represented to the Court that she only

seeks recompense from State Farm for that portion of liability attributable to the actions of Mark Maris. No settlement or release of Maris or his insurance company appears in the record. Nor does it appear that such a settlement has ever been negotiated. As a result, this Court does not find that State Farm's subrogation rights as to Maris have been jeopardized in the least. The fact that settlement was reached with other alleged tortfeasors does not affect the extent of Maris' liability.

Furthermore, to construe the language of the policies at issue in a manner that would result in a reading that settlement with *any* tortfeasor in a given accident voids policy coverage for all tortfeasors would violate the public policy of protecting the injured, non-liable motorist from economic harm.

For a variety of reasons, courts have disallowed application of exclusionary clauses by insurors when applied to *joint tortfeasors*, against whom no liability is asserted by putative plaintiffs. *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Humphrey*, 54 Ala.App. 343, 308 So.2d 255 (1975); *Dairyland Insurance Co. v. Lopez*, 22 Ariz.App. 309, 526 P.2d 1264 (1974); *Ray v. DeMaggio*, 313 So.2d 251 (La.Ct.App.1975).

In *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Humphrey, supra*, an accident involved three drivers and three automobiles. Plaintiff's deceased was a passenger in one of the uninsured autos, another of the automobiles was uninsured, and the last carried insurance. Plaintiff made settlement with the insured driver. Referring to the exclusionary provision of that policy, as well as a trust agreement regarding subrogation, the court said:

> The trust agreement would condition the uninsured motorist coverage upon the surrender by the insured of any right to settle with or to recover from an insured tortfeasor....
> We hold that the trust ageement or subrogation clause, when applied to settlement with or recovery from tortfeasors other than the uninsured motorist is in-

valid and contrary to the intent of the uninsured motorist statute. [308 So.2d at 257, 258.]

Alabama's uninsured motorist statute, like New Mexico's, was silent on the subject of subrogation.

In *Dairyland Insurance Co. v. Lopez, supra*, exclusionary language indistinguishable from that in the case at bar was considered. There two tortfeasors were concerned, one insured, and one not. Settlement was made with the insured driver. Observing that uninsured motorist coverage is intended to substitute for liability insurance which is normally available to injured persons from tortfeasors, the court found weighty public policies against such exclusions of coverage. Significantly, Arizona, like New Mexico, does uphold exclusionary provisions when applied to releases of what are usually referred to as "uninsured motorists," by whom it is meant tortfeasors whose liability underlie claims against uninsured motorist carriers. Thus, the *Lopez* court distinguished *State Farm Fire and Casualty Co. v. Rossini*, 107 Ariz. 561, 490 P.2d 567 (1971), saying:

> *Rossini* is distinguishable from the case *sub judice*. In *Rossini* the release was given to the uninsured motorist and not, as in the instant case, to an insured joint tortfeasor. *Lopez, supra*, [526 P.2d at 1265.]

In *Ray v. DeMaggio, supra*, a series of chain reaction rear-end collisions injured the plaintiff. The plaintiff settled with the insured motorists. Considering language essentially identical to that of the case at bar, the court reviewed its leading authority and found it to be the effect that such:

> ... clause[s] served no valid purpose because failure to obtain [the UM carrier's] consent prior to settling with insurers of cotort-feasors in no way prejudices the uninsured motorist insurer's rights. [*DeMaggio, supra*, 313 So.2d at 253.]

The reason for this analysis by the *DeMaggio* court is significant:

> Because such settlement does not increase the amount for which it can be liable or alter its subrogation rights in any way, the uninsured motorist carrier

has no legitimate reason to reserve to itself a veto power over settlements with cotort-feasors as a requisite to urging a claim under uninsured motorist coverage. [*Id.*]

In *Wescott v. Allstate Insurance*, 397 A.2d 156 (Me.1979), plaintiff was a passenger in an insured automobile, with whom she settled, which collided with an uninsured one, concerning which she brought her uninsured motorist claim. Furthermore, the *Wescott* court applied doctrine well known in New Mexico that uninsured motorist policy provisions repugnant to the statute are void and unenforceable. *See, e.g., American Mutual Insurance Co. v. Romero*, 428 F.2d 870 (10th Cir.); *Schmick v. State Farm Mutual Automobile Insurance Co.*, 103 N.M. 216, 704 P.2d 1092 (1985); *Lopez v. Foundation Reserve Insurance Co.*, 98 N.M. 166, 646 P.2d 1230 (1982). In keeping with the other cases here cited on point, the *Wescott* court found:

> Insofar as the clause restricts the insured's right to compromise and settle his claim against *financially responsible motorists* who might be liable to him, it is contrary to the purpose of the statute, it is against public policy and unenforceable. To permit third party settlements to work a forfeiture of the uninsured motorist protection would destroy the very purpose which the Legislature sought to achieve, i.e. financial responsibility up to policy limits to the extent of the satisfaction of such damage as the insured is legally entitled to recovery from an uninsured motorist. [Citations omitted, emphasis added, *Wescott, supra,* 397 A.2d at 167.]

Notably, the Supreme Court of Maine held that:

> ... the no-consent-to-settlement exclusion clause contained in the Allstate–Wescott policy is no defense where the insured *settled with a person other than the uninsured tortfeasor.* [*Wescott, supra,* 397 A.2d at 168, emphasis added].

Equally important, the *Wescott* court balanced the issue of the extent of the uninsured motorist carrier's subrogation rights and still opined in favor of the plaintiff.

[We concede that the insurer's purpose in having in the policy the no-consent-to-settlement exclusion clause and the provision for reducing the insurer's obligation by all sums paid on account of the bodily injury sustained in the accident from other sources is the protection of the insurer's potential right to subrogation against persons who may be legally liable therefor. [*Id.*]]

## PART II

This Court does not find that the plaintiff's failure to notify State Farm of the underlying accident sooner than she did results in any prejudice to the defendant.

Lack of notice to a policy provider does not void coverage if the policy provider is not prejudiced. *Foundation Reserve Insurance Co. v. Esquibel*, 94 N.M. 132, 607 P.2d 1150 (1980). A number of courts have recently held that the burden of proof to establish prejudice is on the insurance provider. *See, e.g., Ouellette v. Maine Bonding & Casualty Co.*, 495 A.2d 1232 (Me.1985); *Thompson v. Grange Insurance Association*, 34 Wash.App. 151, 660 P.2d 307 (1983). Here, State Farm claims that it has been denied the ability to fully investigate the accident, examine the vehicles involved, and/or interview witnesses while their memories are fresh. (Memo in Support of Summary Judgment at p. 13).

The Court concedes that this case does not come to the defendants in an ideal posture but would point out that a more than adequate defense might easily be provided through the use of accident reports, prior investigations, interviews and statements already taken in the progressive settlements which preceded the filing of this cause. In addition, the defendants have not indicated to the Court that any requested material or information is unavailable to them.

## CONCLUSION

Based on the foregoing, summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is inappropriate on the basis that the defendant is not entitled

to judgment as a matter of law. The defendant's motion is properly denied.