140 P.3d 393

Margaret GRANGER, Plaintiff–Appellant,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant–Appellee,

and

Jane Chong and Jeanette Chong, Defendants.

No. 25457.

Supreme Court of Hawai'i.

Aug. 9, 2006.

---

Roy K.S. Chang and Harvey M. Demetrakopoulos (of Shim and Chang), Honolulu, on the briefs, for plaintiff-appellant.

Carleton B. Reid (of Miyagi, Nohr & Myhre), Honolulu, on the briefs, for defendant-appellee Government Employees Insurance Company.

Michael F. O'Connor (of Oliver, Lau, Lawhn Ogawa & Nakamura), Honolulu, on the briefs, for defendants-appellees Jane Chong and Jeannette Chong.

Terrance M. Revere and Jacqueline E. Thurston (of Motooka Yamamoto & Revere), Honolulu, on the briefs, for United Services Automobile Association.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant Margaret Granger appeals from the October 31, 2002 judgment of the circuit court for the first circuit, the Honorable Dexter D. Del Rosario presiding, in favor of the defendant-appellee Government Employees Insurance Company (GEICO) and against Granger.

On appeal, Granger argues that the circuit court erred in granting summary judgment against her inasmuch as she was entitled to

declaratory judgment as a matter of law: (1) requiring GEICO to "either consent to the settlement ... or ... assume [Granger's] position in the underlying action by paying [her] the amount she would have received from the Chongs"; and (2) rejecting GEICO's proposal that the defendants Jane Chong (Jane) and Jeanette Chong (Jeanette, apparently Jane's mother) [hereinafter, collectively, "the Chongs"] and their insurer, the United States Automobile Association (USAA),[1] be required to agree to a settlement such as that hypothesized in *Taylor v. GEICO*, 90 Hawai'i 302, 978 P.2d 740 (1999), whereby "the victim releases the tortfeasor from all personal claims but preserves the [underinsured motorist (]UIM[)] carrier's right of subrogation," 90 Hawai'i at 312, 978 P.2d at 750 (footnote omitted) [hereinafter, "a *Taylor* release"].

For the reasons discussed *infra* in section III.B., we hold that the circuit court erred in granting summary judgment in GEICO's favor. Accordingly, we vacate the circuit court's October 31, 2002 judgment and remand for further proceedings consistent with the following analysis.

## I. BACKGROUND

In a May 13, 1997 traffic accident, Jane rear-ended Granger and thereby caused injuries in excess of $100,000.00. At that time, the Chongs were covered by $100,000.00 in liability insurance through their policy with USAA. Granger had UIM coverage through her policy with GEICO.[2] On November 19, 1999, Granger filed suit against the Chongs. Granger and the Chongs apparently arrived at a proposal for a settlement whereby Granger "would dismiss ... all of her claims against the Chongs ... in exchange for a payment of $90,000.00." In an April 5, 2001

letter, Granger (1) requested GEICO's consent to the settlement and (2) advised GEICO that she "w[ould] be pursuing a [UIM] claim." On April 10, 2001, GEICO responded that it "c[ould] not refuse consent or consent to waive [its] subrogation interest at th[at] time." Rather, GEICO requested additional information:

> In order to determine whether we may grant any consent ..., we must evaluate our potential UIM subrogation. If you have any assets information on [Jane], please send us a copy. Please ... advise us if [her] parents had any ... excess [bodily injury (]BI[)] coverage.... Please identify each UIM carrier applicable to this loss.... [Y]ou may not present a UIM claim until the BI case is concluded by judgment or settlement.
>
> Once [we are] in possession of these various items, [we] would then expect to discuss any consent issues and potential UIM claim[(s)] with you.

On April 16, 2001, GEICO advised Granger that, "[f]ollowing review of [its] initial asset check information, [its] UIM subrogation appears viable ... and [GEICO] cannot consent to any BI settlement that fully releases [Jane]'s parents from [GEICO's] UIM subro[gation] interests at this time." GEICO further requested that Jeanette complete an assets disclosure affidavit, whereupon it "w[ould] ... further review the matter and advise [Granger] whether [it] must refuse consent or if [it] may consent." Alternatively, GEICO proposed that "USAA may ... elect to use a *Taylor* ... release," and cautioned Granger to "send [GEICO her] proposed release to be sure [GEICO's] UIM subro[gation] rights are, in fact, preserved." (Emphasis added.) On April 20, 2001, Granger wrote to GEICO, advising that the

---

1. USAA is not a party to this case.

2. The policy apparently provided that GEICO

will pay damages an insured is legally entitled to recover for bodily injury caused by accident and arising out of the ownership, maintenance, or use of an underinsured motor vehicle. However, we will not pay until the total of all bodily injury [(BI)] liability insurance available has been exhausted by payment of judgments or settlements.

(Emphases omitted.) The policy contained an exclusion whereby "[t]his coverage does not apply to [BI] to an insured if the insured ... has made a settlement ... without our prior written consent." (Emphases omitted.) A section entitled "trust agreement" read in relevant part: "The insured will hold in trust for our benefit all rights of recovery which he may have against any person ... responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights." (Formatting altered.)

Chongs had "indicated that the settlement w[ould] be withdrawn if the release [Granger] provides is anything less than a full release by [Granger]." Granger further asked GEICO to "forward to [her] immediately . . . $90,000, which will cover the settlement payment [she] would have received from [the] Chong[s]."

On August 22, 2001, Granger filed a complaint in the circuit court praying, *inter alia*, for declaratory judgment as follows:

1. . . . [T]hat GEICO cannot refuse to consent to the settlement of the underlying action and thereby compel [Granger] to either pursue said underlying action to judgment or forfeit her rights to [UIM] coverage;

2. . . . [T]hat GEICO must either consent to the settlement . . . or . . . assume [Granger's] position in the underlying action by paying [her] the amount she would have received from the Chongs . . .; [and]

3. . . . [T]hat th[e circuit] court determine the appropriateness of a *Taylor* . . . release[.]

(Emphasis added.) GEICO answered Granger's complaint on September 14, 2001 and, on December 20, 2001, moved for summary judgment in its favor. In its motion, GEICO argued:

[I]t was appropriate for [GEICO] to . . . refuse to consent to the settlement . . . where the settlement as proposed would have prejudiced the subrogation right [GEICO] would have. . . . Also, . . . [GEICO] is not required to assume [Granger]'s position in the underlying action. . . .

. . . .

. . . By April 16, 2001[,] GEICO had conducted an initial asset check and had preliminarily determined that its UIM subrogation interest appeared viable against the tortfeasor and had requested information to further evaluate its UIM subrogation potential. Although GEICO did not receive the information . . ., it did continue its own investigation of the assets that might be available should it obtain a subrogation interest. . . .

. . . .

. . . [T]he underlying case could be dismissed without prejudice by way of a settlement agreement releasing the Chongs from all claims except the yet to be determined amount, if any, of any [UIM] coverage paid to [Granger]. . . . [Granger] is not being forced to trial by GEICO. She is being forced to trial by [USAA]'s refusal [of a *Taylor* release].

. . . .

To require GEICO to pay the amount of a[ ] . . . settlement . . . would put the cost of a trial and the risk of a . . . judgment for less than that amount on GEICO. . . .

. . . In addition, . . . it is unlikely that [Granger] would be motivated to expend the time and/or effort to aid GEICO . . . if she already has received full compensation. . . .

. . . GEICO should not be required to . . . pursue the tort action of a party that is making a claim against it. The interests of [Granger] and GEICO are adversarial and in conflict with one another. . . .

(Capitalization altered.)

On February 6, 2002, Granger filed a memorandum in opposition. She argued:

The position GEICO advocates . . . would grant the UIM insurer the unilateral power to force cases to go to trial. . . . [T]he purposes of the Hawai['}i UIM law would be subverted if each injured insured were forced to proceed to trial against the tortfeasor for the sole purpose of preserving the UIM insurer's contingent right to subrogation. . . .

Granger cited several cases from other jurisdictions, including *Lambert v. State Farm Mut. Auto. Ins. Co.*, 576 So.2d 160, 167 (Ala. 1991); *Grinnell Mut. Reins. Co. v. Recker*, 561 N.W.2d 63, 69–70 (Iowa 1997); *MacInnis v. Aetna Life & Cas. Co.*, 403 Mass. 220, 526 N.E.2d 1255, 1260 (1988); *Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn.1983); *McDonald v. Rep.-Franklin Ins. Co.*, 45 Ohio St.3d 27, 543 N.E.2d 456, 460 (1989); *Gibson v. State Farm Mut. Auto. Ins. Co.*, 123 Ohio App.3d 216, 704 N.E.2d 1, 6 (1997); *Hamilton v. Farmers Ins. Co. of Wash.*, 107 Wash.2d 721, 733 P.2d 213, 219 (1987); and *Vogt v. Schroeder*, 129 Wis.2d 3, 383 N.W.2d 876, 881 (1986), in support of her alternative

argument that GEICO should at least subrogate itself to Granger's claims against the Chongs.

On February 8, 2002, GEICO filed its reply memorandum. It argued that the New Mexico Supreme Court, in *March v. Mtn. States Mut. Cas. Co.*, 101 N.M. 689, 687 P.2d 1040 (1984), reasoned that " 'the consent provision is not designed to control the insured's access to the courts, but rather to protect the insurer's subrogation rights.' " (Quoting *Taylor*, 90 Hawai'i at 311, 978 P.2d at 749 (quoting *March*, 687 P.2d at 1044).)

On February 14, 2002, the circuit court conducted a hearing on GEICO's motion for summary judgment. At the hearing, GEICO conceded that Granger "correctly states the law in . . . various other jurisdictions," but urged the court to follow *Taylor* as the applicable law in Hawai'i. Granger responded that

> *Taylor* . . . actually does not address this issue[.] . . . The focus of . . . *Taylor* . . . was the consent to settlement clause and the exhaustion clause. What the court . . . dealt with . . . was . . . whether the refusal to consent . . . in that case was reasonable or unreasonable.

(Emphases added.) She reiterated that "the only way GEICO can have the right to pursue claims against . . . the Chongs[ ] is to step into . . . Granger's shoes."

The circuit court granted GEICO's motion and, after denying Granger's March 25, 2002 motion for reconsideration and/or clarification and her June 13, 2002 motion for further relief, entered its October 31, 2002 judgment in favor of GEICO and against Granger, further ruling that "[s]aid Judgment extends to and is binding on [the Chongs]" and that "[t]here are no remaining claims . . . or parties."

On November 8, 2002, Granger filed a timely notice of appeal to this court.

3. HRS § 431:10C–301, entitled "Required motor vehicle policy coverage," provides in relevant part:
  (b) A motor vehicle insurance policy shall include:

## II. *STANDARD OF REVIEW*

We review the circuit court's grant or denial of summary judgment *de novo*. *Hawai'i C[m]ty[.] Fed[.] Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Querubin v. Thronas*, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004) (quoting *Simmons v. Puu*, 105 Hawai'i 112, 117–18, 94 P.3d 667, 672–73 (2004) (quoting *Kahale v. City & County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (quoting *SCI Mgmt. Corp. v. Sims*, 101 Hawai'i 438, 445, 71 P.3d 389, 396 (2003) (quoting *Coon v. City & County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002)))))).

## III. *DISCUSSION*

### A. *The Parties' Arguments*

On appeal, Granger argues that, in accordance with public policy and the intent of the legislature in enacting HRS § 431:10C–301(b)(4) (1993),[3] GEICO should not be able

. . . .
  (4) Coverage for loss resulting from [BI] or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles.

to refuse a settlement agreement and effectively leave her no other alternative to the risk and expense of trial: "Under GEICO's view, if [it] elects not to consent to the release of the [Chongs], [Granger] must choose to either forego the UIM coverage she paid for by settling with the tortfeasor over GEICO's objection, or take the case against the [Chongs] to trial." According to Granger, "the purposes of [HRS § 431:10C–301(b)(4)] would be subverted if each injured insured were forced to proceed to trial ... for the sole purpose of preserving the UIM insurer's contingent right to subrogation. It defeats the whole purpose for buying [UIM] coverage in the first place."

In the alternative, Granger proposes that we adopt the rule established in several other jurisdictions, whereby, if GEICO withholds its consent, it must at least "step into [her] shoes" as her subrogee "[b]y paying her an amount equal to what the Chongs have offered in settlement." *See Lambert,* 576 So.2d at 167; *Grinnell Mut. Reins. Co.,* 561 N.W.2d at 70; *MacInnis,* 526 N.E.2d at 1260; *Schmidt,* 338 N.W.2d at 263; *McDonald,* 543 N.E.2d at 460; *Gibson,* 704 N.E.2d at 6; *Hamilton,* 733 P.2d at 219; *Vogt,* 383 N.W.2d at 881.

In its answering brief, GEICO counters: (1) that its refusal to consent to the settlement was "reasonable"; and (2) that Granger's alternative prayer for a "payoff" equal to the proposed settlement would require us to overturn *Taylor* in favor of other states' models that we and the legislature have—at least implicitly—rejected:

[A]ll the cases cited by Granger predate [*Taylor*].... *Schmidt* ..., ... *MacInnis* [,] ... and *Gibson* ... were cited in *Taylor* .... Although the other cases mentioned by Granger were not cited in *Taylor,* given the dates of those decisions and the treatises cited in *Taylor,* it is likely that this Court was well aware of the manner in which those few other jurisdictions handled

matters such as this and rejected that approach.... This Court would not have addresse[d] the use of a "limited release" if it had in mind the approach advocated by Granger....

. . . .

... *Taylor* was decided on May 5, 1999. There have been three full sessions of the ... legislature since that time.[4] If the legislature ... felt that the decision was somehow inconsistent with its legislative intent ... [,] it could have passed legislation to change the approach taken[,] including the adoption of the procedure now advocated by Granger. It has not done so.

(Formatting altered.) Moreover, GEICO argues, the consent-to-settle provision in its policy would be enforceable in most jurisdictions, including Hawai'i.

Furthermore, GEICO seems to urge that we should somehow force the parties and USAA into a *Taylor* release and that, if anybody acted unreasonably, it was USAA and the Chongs by refusing to agree to a limited settlement.[5] (Quoting *Taylor,* 90 Hawai'i at 311–12, 978 P.2d at 749–750.)

Finally, GEICO contends that Granger's position requires it to assume a risk of the unknown, inasmuch as the true monetary value of Granger's injuries remains unadjudicated. Moreover, GEICO argues, it should not be required to advocate Granger's position in the tort context while at the same time defending against a possible contractual dispute with Granger concerning her UIM claim.

B. *Analysis*

1. *GEICO's refusal to consent, after investigation, to protect its possible recovery as Granger's subrogee, was reasonable.*

■ In *Taylor,* the plaintiffs were injured by an underinsured motorist. 90 Hawai'i at

---

Effective June 19, 1997 and July 20, 1998, the legislature amended this section in respects not germane to this appeal. *See* 1998 Haw. Sess. L. Act 275, §§ 16 and 37 at 928–29, 940; 1997 Haw. Sess. L. Act 251, §§ 38 and 70 at 534–35, 553.

4. GEICO filed its answering brief on March 19, 2003.

5. GEICO's request for this court to impose a *Taylor* release, upon the Chongs and USAA—a non-party—is injusticiable for want of personal jurisdiction.

304, 978 P.2d at 742. Notwithstanding a provision in GEICO's [6] policy that "[UIM] coverage does not apply . . . if the insured . . . has made a settlement . . . without our prior written consent," the plaintiffs "executed a joint tortfeasor release and indemnity agreement," against GEICO's wishes, whereby the underinsured tortfeasor would pay the plaintiffs an amount less than "the bodily injury policy limits of the [tortfeasor's] carrier." 90 Hawai'i at 304–05, 978 P.2d at 742–43 (emphases omitted).

We held that consent-to-settle provisions do not, "per se, contravene the intent of HRS § 431:10C–301(b)(4)," see supra note 3.[7] 90 Hawai'i at 307–09, 978 P.2d at 745–47. Moreover, we "agree[d] with GEICO that the protection of the UIM carrier's subrogation rights would be a reasonable basis for a refusal to consent to settlement. . . . The preservation of a UIM carrier's subrogation rights is consistent with the interests of this state's public policy." 90 Hawai'i at 310, 978 P.2d at 748. Nonetheless, we held that, because GEICO justified its withholding of consent to the settlement "solely upon an invalid exhaustion clause" and not a "desire to preserve its subrogation rights," Taylor's failure to obtain consent "was . . . not . . . a legitimate basis for denying the [appellants'] application for UIM benefits":

> [T]he legitimate invocation of a consent-to-settle provision "requires the insurer to demonstrate prejudice from the insured's failure to obtain the insurer's consent. . . ." . . . "If the carrier denies the claim . . . without a good faith investigation into its merits . . .," the carrier may not deny UIM benefits. . . . [T]he . . . investigation should address factors such as "the amount of assets held by the tortfeasor, the likelihood of recovery via subrogation, and the expenses and risks of litigating the insured's cause of action."

90 Hawai'i at 309–11, 314, 978 P.2d at 747–49, 752 (emphasis in original) (quoting Greenvall v. Maine Mut. Fire Ins. Co., 715 A.2d 949, 954 (Me.1998); Allstate Ins. Co. v. Beavers, 611 So.2d 348, 351 (Ala.1992); Gibson, 704 N.E.2d at 6) (some citations omitted).

On the other hand, in the present matter, GEICO undisputedly investigated factors that would render subrogation more or less favorable to GEICO. Even Granger's complaint acknowledged that "GEICO . . . demanded that [she] obtain information regarding the personal assets of the Chongs" and that GEICO later concluded that "the Chongs ha[d] personal assets."

Consequently, we believe that GEICO's refusing to consent in order to protect its subrogation rights, in light of its investigation, was reasonable pursuant to this court's dictum in Taylor. Nevertheless, it was unnecessary in Taylor for us to discuss what further steps would be required of a UIM insurer that did withhold consent reasonably.

2. *Having refused to consent to the proposed settlement, GEICO must tender $90,000.00 to Granger.*

■ We agree with Granger that GEICO, having withheld its consent, must put itself in the position of Granger's subrogee by paying her $90,000.00, the amount of the Chongs' offer.

■ At least eighteen jurisdictions have adopted the rule that, after the UIM insurer has a reasonable opportunity to consider the implications of a pending settlement, it must either allow the settlement to proceed or tender to its insured a payment equal to the tortfeasors' settlement offer (up to the limits of the insured's UIM coverage). See, e.g., Lambert, 576 So.2d at 166 n. 4, 167–68; Grinnell Mut. Reins. Co., 561 N.W.2d at 70; Nationwide Mut. Ins. Co. v. State Farm Auto. Ins. Co., 973 S.W.2d 56, 58 (Ky.1998);

---

6. GEICO was also the plaintiffs' insurer in *Taylor*.

7. The legislative history of HRS § 431:10C–301(b)(4), which took effect on June 13, 1988, see 1988 Haw. Sess. L. Act 306, §§ 1 and 4 at 575–77, does not aid this court's analysis of the present appeal except to confirm that the purpose of

adding HRS § 431:10C–301(b)(4) was "to provide protection . . . for persons who are injured by [UIM]s." Sen. Conf. Comm. Rep. No. 215, in 1988 Senate Journal, at 675; Hse. Conf. Comm. Rep. No. 126–88, in 1988 House Journal, at 826; Hse. Stand. Comm. Rep. No. 1150–88, in 1988 House Journal, at 1248.

*MacInnis,* 526 N.E.2d at 1260–61; *Schmidt,* 338 N.W.2d at 263; *Hamilton,* 733 P.2d at 220; *Vogt,* 383 N.W.2d at 882, 883 & n. 8; Irvin E. Schermer & William J. Schermer, 3 *Automobile Liability Insurance* § 42:17 (4th ed. 2004 & Supp.2006); Alan I. Widiss & Jeffrey E. Thomas, 3 *Uninsured and Underinsured Motorist Insurance* § 43.6 (3d ed. 2005) ("[T]he *insurer* bears the risk that a subsequent recovery will be less than the amount paid to the insured.") (emphasis added). The Alabama Supreme Court, in *Lambert,* described the procedure to be followed when a victim who is covered by UIM insurance is injured by an underinsured motorist:

> If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement ..., and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the [UIM] insurance carrier of the ... terms....
>
> ... [T]he insured should also inform the carrier as to whether the insured will seek [UIM] benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay [UIM] benefits.... [T]he carrier should immediately begin investigating the claim,[8] ... conclude such investigation within a reasonable time, and ... notify its insured of the action it proposes....
>
> ... The insured should not settle with the tort-feasor without first allowing the [UIM] insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.
>
> ....
>
> ... *If the [UIM] insurance carrier wants to protect its subrogation rights, it must, within a reasonable time,* and, in any event before the tort-feasor is released

by the carrier's insured, *advance to its insured an amount equal to the tort-feasor's settlement offer.*

576 So.2d at 167 (emphases added). The Minnesota Supreme Court more thoroughly fleshed out the cost/benefit analysis that the insurer performs:

> If the underinsurer were to determine after assessment that recovery of underinsurance benefits ... was unlikely (e.g., where the liability limits are exhausted or nearly so and the tortfeasor is judgment-proof), it could simply let the "grace period" expire and permit the settlement and release....
>
> If, on the other hand, damages were substantially more than the liability limits and the tortfeasor had substantial assets, the underinsurer could substitute its payment to the insured in an amount equal to the tentative settlement.

*Schmidt,* 338 N.W.2d at 263. Of course, having thus preserved its subrogation rights, the insurer could then pursue its own action against the tortfeasor.

At least twelve states have statutorily codified this procedure and the duration of the insurer's grace period. Ark.Code Ann. § 23–89–209(d)(1) and (3) (2004 & Supp.2005) (allowing the UIM insurer a thirty-day grace period); Fla. Stat. Ann. § 627.727(6)(b) (West 2005 & Supp.2006) (same); 215 Ill. Comp. Stat. Ann. § 5/143a–2(6) (West 2000 & Supp.2006) (same); Ind.Code Ann. § 27–7–5–6(b) (LexisNexis 1999 & Supp.2005) (same); Kan. Stat. Ann. § 40–284(f) (2000 & Supp. 2005) (sixty days); Ky.Rev.Stat. Ann. § 304.39–320(4) (LexisNexis 2001 & Supp. 2005) (thirty days); Md.Code Ann., Ins. § 19–511(c) (LexisNexis 2006) (same); N.C. Gen.Stat. § 20–279.21(b)(4) (2005) (same); N.D. Cent.Code § 26.1–40–15.5.2 (2002 & Supp.2005) (same); Okla. Stat. Ann. tit. 36, § 3636.F.2 (West Supp.2006) (sixty days); Tenn.Code Ann. § 56–7–1206(k) (2000 & Supp.2005) (thirty days); W. Va.Code Ann. § 33–6–31e(c) (LexisNexis 2003 & Supp.2006)

---

8. The insurer's obligation to consent or be subrogated "is not triggered ... if the insured has failed to satisfy its contractual obligation to provide information to the underinsurer to assist the

underinsurer in determining damages." *Pitts v. Trust of Knueppel,* 282 Wis.2d 550, 698 N.W.2d 761, 776 (2005).

(sixty days). Our research reveals no contrary authority.

■ In the present matter, no party disputes that the Chongs offered Granger $90,000.00 for a full release, nor that Granger notified GEICO of the Chongs' offer. GEICO should have been left to the task of estimating whether (1) "buying" itself the right to sue for $90,000.00 and then incurring the time and expense of litigation will net a more favorable outcome than (2) permitting the compromise and then reimbursing Granger for her compensable damages that exceed $100,000.00, *see Taylor*, 90 Hawai'i at 313, 978 P.2d at 751 (quoting *Longworth v. Van Houten*, 223 N.J.Super. 174, 538 A.2d 414, 423 (Ct.App.Div.1988) ("[I]f the victim does accept less than the tortfeasor's policy limits, his [or her] recovery against his [or her] UIM carrier must nevertheless be based on a deduction of the full policy limits.")). If GEICO, in good faith, prefers to prolong the lawsuit against the Chongs for its own benefit, it may do so. *See* discussion *supra* in section III.B.1. Nonetheless, we cannot allow GEICO to conscript Granger as its "vicarious plaintiff" for the purpose of recovering, at substantial cost, funds that she already paid GEICO to bear the risk of providing in the event of an underinsured injury.[9] *See Pitts v. Trust of Knueppel*, 282 Wis.2d 550, 698 N.W.2d 761, 773 (2005) ("[T]he transfer of risk is the only reason that insureds pay premiums to insurers."); *Vogt*, 383 N.W.2d at 882.

## IV. *CONCLUSION*

We hold that the circuit court erred in granting summary judgment in GEICO's favor and, accordingly, vacate the circuit court's October 31, 2002 judgment and re-mand for further proceedings consistent with this opinion. On remand, the circuit court shall grant Granger the declaratory relief she seeks in paragraphs 1 and 2 of her prayer, *see supra* section I; that is, having received notice of its possible subrogation interest and having concluded its investigation into the Chongs' assets and insurance coverage, GEICO must, within a reasonable time following the circuit court's ruling on remand, *either* (1) consent to the proposed settlement among the Chongs, Granger, and USAA, *or* (2) pay Granger the proposed settlement amount of $90,000.00 and thereby assume the position of Granger's subrogee with respect to the Chongs.

---

9. As noted *supra* in section I, GEICO posed the question in its December 20, 2001 motion for summary judgment whether Granger "would be motivated to expend the time and/or effort to aid GEICO" in its subrogation action were GEICO to tender $90,000.00 to her. However, according to the express language of GEICO's UIM policy, which GEICO attached to its motion, Granger is subject to a duty to *"do whatever is necessary to secure all rights of recovery* and ... do nothing after the loss to prejudice these rights." (Emphasis added.) We believe that this "cooperation clause" would impose upon Granger such specific duties as submitting to interviews by GEICO, giving GEICO information with which to reconstruct the pertinent events, "[a]ttending depositions and other ... proceedings such as ... trial[,] ... [and g]iving truthful testimony and following the direction of counsel." *See* Jeffrey W. Stempel, *Stempel on Insurance Contracts* § 9.02[A] & n. 19 (3d ed. 2006) ("[T]he typical cooperation clause is short and generic, implicitly imposing a duty ... derived from common sense.") (citations omitted).