165 P.3d 961

**Dawna C. ZANE, Plaintiff–Appellee–Respondent,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant–Appellant–Petitioner.**

**No. 27317.**

Supreme Court of Hawai'i.

Aug. 14, 2007.

---

**12.** Because I would hold that the case should be dismissed, I do not reach the merits of the case.

**62**

Ward F.N. Fujimoto (Ward F.N. Fujimoto and Randall Y.S. Chung, of Matsui Chung, on the briefs), Honolulu, for the defendant-appellant-petitioner Liberty Mutual Fire Insurance Company.

1. HRS § 431:10C–103 defines "[u]nderinsured motor vehicle" as "a motor vehicle with respect to the ownership, maintenance, or use for which [the] sum of the limits of all [BI] liability insurance coverage and self-insurance *applicable* at the time of loss is less than the liability for damages imposed by law." (Emphasis added.) Effective April 19 and 27, 2000, the legislature amended this section in respects not germane to the present matter. *See* 2004 Haw. Sess. L. Act 10, §§ 13, 14, and 18(3) and (4) at 24–25; 2000

Bert S. Sakuda (Bert S. Sakuda and Geoffrey K.S. Komeya, of Cronin, Fried, Sekiya, Kekina & Fairbanks, on the brief), Honolulu, for the plaintiff-appellee-respondent Dawna C. Zane.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and Circuit Judge STRANCE, in place of ACOBA, J., Recused.

Opinion of the Court by LEVINSON, J.

On January 23, 2007, the defendant-appellant-petitioner Liberty Mutual Fire Insurance Company (Liberty Mutual) filed an application for a writ of certiorari urging us to review the published opinion of the Intermediate Court of Appeals (ICA) in *Zane v. Liberty Mut. Fire Ins. Co.*, No. 27317 (Oct. 31, 2006) [hereinafter, "slip op." or "*Zane I*"], which vacated the first circuit court's April 25, 2005 judgment, the Honorable Eden Elizabeth Hifo presiding, granting summary judgment in favor of the plaintiff-appellee-respondent Dawna C. Zane and against Liberty Mutual, and remanded the matter to the circuit court for further proceedings. In its application, Liberty Mutual urged that: (1) notwithstanding DaimlerChrysler's settlement with Zane in the underlying tort action, *see infra* section I.C, its self-insurance was "applicable" within the meaning of Hawai'i Revised Statutes (HRS) § 431:10C–103 (Supp.1999)[1] such that its bodily injury (BI) coverage limit should offset the amount of Zane's underinsured injuries for which Liberty Mutual, as her underinsured motorist (UIM) carrier, would otherwise be responsible; and (2) Liberty Mutual's consent to Zane's settlement with DaimlerChrysler did not estop Liberty Mutual from asserting the aforementioned offset pursuant to *Taylor v. Gov't Employees Ins. Co.*, 90 Hawai'i 302, 978 P.2d 740 (1999), and *Gov't Employees Ins. Co. v. Dizol*, 176 F.Supp.2d 1005 (D.Haw. 2001).[2] Zane filed a timely response.

Haw. Sess. L. Act 24, §§ 4 and 15 at 41, 47, Act 66, §§ 1 and 3 at 122.

2. We noted in *Taylor* that, by settling with an alleged tortfeasor in a motor vehicle personal injury case for less than the alleged tortfeasor's BI policy limits, a "UIM insured agrees to forego compensation for the difference between the settlement amount and the tortfeasor's liability policy limits. The UIM carrier will not be responsible for covering that 'gap,' " 90 Hawai'i at 313,

We accepted Liberty Mutual's application to correct the ICA's erroneous holding that DaimlerChrysler, solely by virtue of it (1) never having been adjudicated liable to Zane and (2) apparently having settled only for the anticipated expenses of litigation and not an amount representing a compromised or *pro rata* discount of clear liability value, as a matter of law could not be a "tortfeasor" for purposes of the *Taylor* rule, *see supra* note 2, such that Zane's UIM benefits were not offset by an amount equal to the gap between the amount of DaimlerChrysler's settlement and its (in this case, effectively infinite) BI limit. For the reasons discussed *infra* in section III.B, we hold that there remains a genuine issue of material fact as to whether Liberty Mutual represented to Zane that it would not employ the *Taylor* rule as a basis for reduction of her benefits and, accordingly, vacate the ICA's opinion in *Zane I* and the judgment arising therefrom, vacate the circuit court's judgment, and remand this matter to the circuit court for further proceedings. As guidance on remand, should the trier of fact find that no estoppel occurred, we disagree with Zane's position that a settling but—by agreement of the parties—factually non-liable party is, *per se*, not a "tortfeasor" for purposes of the *"Taylor* rule." Inasmuch as Zane failed to brief her alternative argument on appeal, advanced instead in her April 25, 2007 motion for reconsideration, that the insurance of a non-owner/operator of an underinsured motor vehicle is not applicable to the *Taylor* gap, that contention is waived for purposes of this appeal, and we do not consider it at this time.

## I. BACKGROUND

### A. The Taylor Line

Despite the parties' agreement with the general rule of *Taylor* and its progeny, we recite the relevant analysis of those cases by way of orientation.

In *Taylor*, the plaintiff Rosalina Taylor, who held a UIM insurance policy through the defendant Government Employees Insurance Company (GEICO), "was injured in a collision with a vehicle driven by Mary McKaig, who was insured ... by State Farm Mutual Automobile Insurance Company (State Farm)." 90 Hawai'i at 304, 978 P.2d at 742. In accordance with a consent-to-settle clause in GEICO's UIM policy (*i.e.*, "[UIM] coverage does not apply ... if the insured ... has made a settlement ... without our prior written consent" (emphasis omitted)), Taylor informed GEICO "that State Farm had offered to settle [her] claim" and requested GEICO's "permission to settle." *Id.* GEICO responded that it "w[ould] not grant concurrence with regard to ... [Taylor's] settlement as [she] ha[d] not obtained the [BI] policy limits of [State Farm]." *Id.* (emphasis and internal quotation signals omitted). Nevertheless, Taylor settled with and released McKaig and State Farm for an amount less than the BI limits of McKaig's policy, after which GEICO refused to pay UIM benefits and Taylor sued for declaratory relief. *Id.* at 305, 978 P.2d at 743. The circuit court granted GEICO's motion for summary judgment, and Taylor appealed. *Id.* Our analysis centered on the validity of GEICO's consent clause and the reasonableness of GEICO's refusal to give consent. We declined to disapprove consent-to-settle clauses in UIM policies across the board, but held that "a UIM carrier's grounds for denying UIM benefits under a consent-to-settle provision in a UIM policy must be reasonable, in good faith, and within the bounds of the intent underlying HRS § 431:10C–301(b)(4) [ (requiring motor vehicle insurance policies to include UIM coverage) ]." *Id.* at 309, 311–12, 978 P.2d at 747, 749–50; *accord id.* at 315, 978 P.2d at 753 (Nakayama, J., concurring). GEICO's asserted reason for denial—essentially that Taylor sought to settle for less than State Farm's BI limit—was unreasonable inasmuch as it denied Taylor

---

978 P.2d at 751. For further discussion, *see infra* section I.A. We reaffirmed this principle in *Granger v. Gov't Employees Ins. Co.*, 111 Hawai'i 160, 168, 140 P.3d 393, 401 (2006), and the United States District Court for the District of Hawai'i recognized it in *Dizol*, 176 F.Supp.2d at 1031–33. (Neither the present application nor

*Zane I* cites *Granger*, although it was handed down before *Zane I*, on August 9, 2006.) In the present matter, Zane concedes that the *Taylor* rule would control but for, as she maintains, DaimlerChrysler's lack of tortfeasor status. *See infra* section I.C.2.

"the perfectly reasonable choice of saving months, if not years, of delay, trial preparation expense, and all the ensuing wear and tear by simply accepting the offer and, as a condition of proceeding with h[er] UIM claim, foregoing the difference between the tortfeasor's policy limit and the tortfeasor's insurer's offer." *See id.* at 313–14, 978 P.2d at 751–52 (majority opinion); *cited in Granger v. Gov't Employees Ins. Co.*, 111 Hawai'i 160, 168, 140 P.3d 393, 401 (2006) (where plaintiff had compromised with tortfeasors for $90,000.00 of their $100,000.00 limit, reaffirming that "[i]f the victim does accept less than the tortfeasor's policy limits, his [or her] recovery against his [or her] UIM carrier must nevertheless be based on a deduction of the full policy limits" (emphasis and internal quotation signals omitted) (some bracketed material added and some in original)). Consequently, because "[t]he UIM carrier will not be responsible for covering [the difference or "gap" between the settlement amount and the tortfeasor's liability policy limits] as a component of its obligation to compensate its insured for injury and damage exceeding the tortfeasor's policy limits ...], there is no legitimate reason for the UIM carrier to refuse to consent to a settlement on that basis." *Taylor*, 90 Hawai'i at 314, 978 P.2d at 752.

In *Dizol*, the decedent Kevin Dizol was a passenger in a van the driver of which had been drinking at a bar before the subject accident. 176 F.Supp.2d at 1009. The driver was covered by a $35,000.00 BI policy. *Id.* at 1010. Dizol's estate sued the bar and the deceased driver's estate, and settled (1) with the bar for less than its BI limit and (2) with the driver's estate for its policy limit. *See id.* Dizol's "projected loss of earnings" was greater than the total of the payments actually received, by a difference of $17,177.00, but less than the sum of the defendants' BI policy limits. *See id.* Dizol held a UIM policy for $70,000.00, but his estate had settled without the consent of his UIM insurer. *Id.* The UIM insurer brought a declaratory action against Dizol's estate, seeking "a set off against" the estate's

UIM benefits "of ... the full amount of [BI] coverage available to ... [the bar]." *See id.* at 1012. The UIM insurer subsequently moved for summary judgment, which the United States District Court for the District of Hawai'i granted in relevant part. *See id.* at 1030–31, 1032 & n. 33, 1033. While the UIM insurer was unaware of and had not consented to the tort settlement, the court extended the *Taylor* rule to the facts of *Dizol*. The court concluded "that under Hawai[']i law, amounts forgone in below[-]policy[-]limits settlements with joint tortfeasors *without* the UIM carrier's consent are properly used to offset the carrier's liability." *Id.* at 1033 (emphasis added).

### B. The Motor Vehicle Accident

The present matter arose out of a February 10, 2000 motor vehicle accident. Zane was a passenger in a Dodge Neon automobile that was manufactured by DaimlerChrysler, driven by Richard Thomas, and insured by Liberty Mutual under both BI and UIM coverages. Slip op. at 2–3. The Neon and another vehicle, driven by Sarah Kim and insured by State Farm, collided at an intersection in Honolulu. *Id.* at 2. The accident rendered Zane a paraplegic. *Id.* Zane sued Thomas, Kim, and DaimlerChrysler. *Id.* at 3.

### C. The Settlement And Proceedings Before The Circuit Court

Through mediation with retired circuit court judge E. John McConnell, Thomas and Kim and their insurers, Zane, and DaimlerChrysler reached a settlement, under the terms of which DaimlerChrysler contributed $200,000.00, Kim contributed her BI limit of $100,000.00, and Thomas contributed his BI limit of $1,350,000.00; furthermore, under a prior settlement agreement, Zane's parents' insurer, AIG Hawai'i Insurance Company, Inc. (AIG), contributed $40,000.00.[3] Thus, Zane recovered a total of $1,690,000.00. *Id.* The parties readily agree that the total value of Zane's injuries would exceed $1,690,000.00.

---

**3.** Neither the record nor the parties address whether the BI limits under the AIG policy exceeded $40,000.00.

At some point, Zane applied for UIM benefits representing the difference between $1,690,000.00 and her actual damages. As both parties agree, "Liberty Mutual initially accepted coverage, but" then "refused to tender [UIM] benefits on the theory that 'it appear[ed] that ... Kim,' " i.e., the driver of the "other" car and, hence, the underinsured motorist from Zane's perspective,[4] " 'was not negligent for the bodily injuries sustained by ... Zane.' " Liberty Mutual having denied her claim, Zane initiated the present matter, seeking a declaratory judgment in the circuit court that she was entitled to UIM benefits as Thomas's passenger. Id. The parties agree that Liberty Mutual gave prior consent to the act of settling with DaimlerChrysler and its codefendants, but disagree as to whether Liberty Mutual also represented to Zane that it understood and either agreed or did not dispute that DaimlerChrysler's limitless self-insurance[5] would be excluded from the calculation of the Taylor "gap," i.e., that Liberty Mutual would compensate Zane for her damages exceeding the settlement amount without regard to DaimlerChrysler's infinite BI self-insurance coverage. The manner by which Zane communicated the terms and circumstances of the settlement, Liberty Mutual's understanding thereof, and its representations, if any, to Zane, determine whether Liberty Mutual was estopped from deducting the value of the Taylor "gap," inclusive of DaimlerChrysler's unlimited BI self-insurance, from Zane's UIM benefits. See discussion infra section III.B.

1. *Circuit court filings*

In her May 8, 2002 complaint, Zane averred, inter alia, as follows:

13. ... Liberty Mutual inquired about the terms of the DaimlerChrysler settlement. On December 20, 2001 Liberty Mutual senior claim specialist[ ] Colin M. Chang ... was informed that the DaimlerChrysler contribution was ... $200,000.

14. Liberty Mutual thereupon gave its verbal approval of the [BI] liability settlement and thereafter confirmed ... by letter dated December 20, 2001 that "we ... do not object to [Zane] resolving her [BI] liability claims against the liable parties."

15. Liberty Mutual also requested a copy of the DaimlerChrysler Release for its files on January 7, 2002. Zane advised

---

4. Zane's status as Liberty Mutual's UIM insured is grounded in the UIM policy's definition of "[i]nsured" as, inter alia, "[a]ny other person occupying your [i.e., the insured signatory's] covered auto." (Emphases omitted.)

5. In her April 25, 2007 motion for reconsideration, Zane contends that, in our earlier version of this opinion, Zane v. Liberty Mutual Fire Ins. Co., No. 27317 (Haw. Apr. 16, 2007), we incorrectly described DaimlerChrysler's BI coverage as "self-insurance." Zane argues that "DaimlerChrysler is 'self-insured in the lay, general sense of the term (i.e. not insured by a commercially purchased [BI] liability insurance policy), but clearly not with respect to an 'underinsured motor vehicle.' " In other words, in Zane's view, "self-insurance" is a term of art referring to the BI coverage of motor vehicle owners who formally register as "self-insurers" by the procedure set forth in HRS § 431:10C-105. DaimlerChrysler apparently not being a "self-insurer" for purposes of HRS § 431:10C-105, Zane believes that DaimlerChrysler's BI limit is "frustratingly ambiguous" because, whereas "self-insurers" must "provide[ ] ... securities affording security substantially equivalent to that afforded under a motor vehicle insurance policy," DaimlerChrysler's BI limit was never fixed through formal registration or by operation of a contract. We disagree with Zane's conclusion.

From the outset, Zane has held out, and we have therefore assumed for purposes of our analysis, that DaimlerChrysler carried BI "insurance," which was "unlimited" for "Taylor gap" purposes. See, e.g., Zane's Mot. for Summary J. at 9 ("Insurance coverage for DaimlerChrysler is, for all practical purposes, unlimited."); Transcript of Proceedings 6/4/03 at 12–13 (Zane: "[Daimler]Chrysler's insurance is, for all practical purposes, unlimited—... for this case it is."). In other words, Zane has consistently admitted that DaimlerChrysler was covered—though probably by its own coffers—in an amount that exceeded the total amount of Zane's otherwise unrecovered damages.

We acknowledge Zane's concern that if, in a different case, a settling defendant were un- or underinsured, and yet happened to be endowed with great wealth of a value that was not crystallized by agreement of the parties or judicial admission, to characterize the defendant as "insured" or "self-insured" would invite a dispute over the limit of the defendant's BI "coverage." Nevertheless, that is not the case before us. By Zane's unwavering judicial admission, DaimlerChrysler's deep pockets are a source of BI "insurance" the limit of which is definitive for present purposes.

Liberty Mutual that the formal settlement agreement was not yet finalized and thereafter forwarded a copy of the finalized and signed release.

. . . .

26. *Liberty Mutual consented to the liability settlement with DaimlerChrysler and may not now object to that settlement as a basis for denying [UIM] benefits.*

(Emphases added.) Zane prayed for "[a] declaration of the rights and obligations of the parties under the Liberty Mutual policy" and "[a] declaration that Liberty Mutual must provide [UIM] coverage to Zane." [6] On May 20, 2002, Liberty Mutual removed the present matter to the United States District Court for the District of Hawai'i. On May 21, 2002, in the United States District Court, Liberty Mutual filed its answer to Zane's complaint and appended its own counterclaim. In its answer and its responsive pretrial statement, Liberty Mutual admitted the averments in Zane's complaint, set forth *supra*, with the exception of the boldface language. Liberty Mutual also conceded in its responsive pretrial statement that it "consented *to the liability settlement with DaimlerChrysler* and may not now object *to that settlement* as a basis for denying [UIM] benefits." (Emphases added.) On June 28, 2002, in the United States District Court, Liberty Mutual filed an amended counterclaim against Zane in which it alleged in relevant part that DaimlerChrysler's self-insurance should completely offset Zane's claim for UIM benefits:

> [Liberty Mutual] is entitled to a credit for the total limits of any and all [BI] liability insurance and self-insurance available to satisfy [Zane]'s claims . . . and the total amount of such limits exceeds the amount of damages . . . ; [and]
>
> . . . [Liberty Mutual] is entitled to a credit for the total amount of settlement

proceeds paid for the benefit of [Zane] in connection with [her] claims . . . . [7]

Liberty Mutual prayed for a declaratory judgment "that [Zane] is not entitled to . . . [ ]UIM . . . benefits from [Liberty Mutual]."

The United States District Court remanded the case to the state circuit court on October 31, 2002.

On May 16, 2003, both parties moved for summary judgment. In her motion, Zane characterized DaimlerChrysler's settlement amount as "nuisance value" and argued that, inasmuch as "[n]either [she], Liberty Mutual nor State Farm were able to develop a viable product liability claim" against Daimler-Chrysler, DaimlerChrysler was not an "actual responsible tortfeasor[ ]" and its insurance or self-insurance did not constitute an "*applicable* [BI] liability . . . policy" to "be exhausted before payment of UIM benefits." (Emphasis in original.) (Internal quotation signals omitted.) (Quoting *Taylor*, 90 Hawai'i at 313, 978 P.2d at 751; *Dizol*, 176 F.Supp.2d at 1027, 1030, 1033; *Mulholland v. State Farm Mut. Auto. Ins. Co.*, 171 Ill. App.3d 600, 122 Ill.Dec. 657, 527 N.E.2d 29, 35–36 (1988); *Arenson v. Am. Reliance Ins. Co.*, 284 N.J.Super. 337, 665 A.2d 394, 397 (1994); *Colonial Penn Ins. Co. v. Salti*, 84 A.D.2d 350, 446 N.Y.S.2d 77, 80–81 (1982).) (Citing *Tate v. Secura Ins.*, 587 N.E.2d 665 (Ind.1992).)

In her May 27, 2003 memorandum in opposition to Liberty Mutual's motion for summary judgment, Zane contended that Liberty Mutual's consent to the settlement reflected not only its willingness to waive any subrogation rights against DaimlerChrysler, but also its understanding that DaimlerChrysler's settlement amount was merely "nuisance value" and that its self-insurance would not be available to offset Zane's UIM claim. Zane attached to her memorandum in opposition (1) affidavits by her attorneys Keith K.H. Young, Denise K.H. Kawatachi, and Bert S.

---

6. In her pretrial statement, Zane added that Liberty Mutual, despite having given its consent to settle the liability claims and Zane's dismissal of the liability claims in reliance on Liberty Mutual's consent, has now reneged on its consent. . . . Of course it is now impossible for Zane to recover the balance of her damages from DaimlerChrysler because she settled the

liability claim and dismissed the action against DaimlerChrysler with prejudice after receiving Liberty Mutual's consent and in reliance thereon.

7. Zane does not contest this second premise. *See infra* note 13 and accompanying text.

Sakuda, and (2) the various exhibits that they purported to authenticate. Young averred that he had

> spoke[n] to Chang and fully advised Liberty Mutual of the facts of the settlement, circumstances requiring abandonment of the product liability claim for *a nuisance value settlement of $200,000 approximating . . . defense costs*, the reasons[8] that no viable product liability claim existed, and requested consent to the liability settlement without prejudicing Zane's right to payment of UIM benefits. *[Chang] acknowledged understanding the situation and extended Liberty Mutual's consent to settlement of the liability claims as discussed without prejudicing Zane's right to payment of UIM benefits.* . . . [I]t was understood that Liberty Mutual would continue processing Zane's request for UIM benefits (which had already been requested) on the merits given Liberty Mutual's consent to the liability settlement.

(Emphases added.) Young further attested that,

> [u]p until the time Zane finalized the . . . settlement . . . on March 8, 2002, communications to and from Liberty Mutual were all premised on the understanding that Zane's UIM claim was being processed without any claim that Liberty Mutual did not owe UIM benefits because of the failure to exhaust DaimlerChrysler's policy limits. Had Liberty Mutual reneged on its consent and denied benefits . . . at any time . . ., he [sic] would not have proceeded with the liability settlement.

The attached Exhibit 1 appears to be Chang's January 30, 2002 letter to Kawatachi, implying his awareness of the impending settlement.

In Liberty Mutual's May 27, 2003 memorandum in opposition and its own cross-motion, it argued that: (1) by virtue of DaimlerChrysler's posture as a settling defendant, Liberty Mutual was entitled to the *Taylor* offset in the amount of DaimlerChrysler's "unlimited" BI self-insurance (a) regardless of Liberty Mutual's consent and (b) regardless of whether DaimlerChrysler's compromise reflected mere "nuisance value"; and

(2) in any case, DaimlerChrysler's $200,000.00 settlement "cannot be reasonably described as a 'nuisance value.'" (Citing, *e.g.*, *Taylor*, 90 Hawai'i at 313–14, 978 P.2d at 751–52; *Dizol*, 176 F.Supp.2d at 1027–33.) Furthermore, in its May 30, 2003 reply to Zane's memorandum in opposition, Liberty Mutual challenged Zane's characterization of the communications between the parties. Liberty Mutual countered that Zane was aware that it planned to rely on the *Taylor* rule to offset her UIM claim, inasmuch as it "did, in fact, communicate the *Dizol* . . . case to [Zane's] counsel's attention as early as January 8, 2002." Liberty Mutual continued:

> [Zane] can point to no *affirmative* representation or conduct by Liberty Mutual specifically indicating that such an offset or credit would *not* apply and any reliance by [Zane] upon the absence of such a representation or affirmative conduct would have been unreasonable. . . .
>
> . . . .
>
> . . . More importantly, . . . [d]uring a January 8, 2002 telephone conversation between . . . Chang and . . . Kawatachi . . . with regard to . . . Zane's UIM claim, [Chang] specifically told . . . Kawatachi that *[the] offset discussed in . . . Dizol . . . may be applicable to [Zane]'s claim* and . . . Kawatachi said . . . that she would look at . . . *Dizol* and get back to [him], but never did.
>
> . . . [Zane] did *not* finalize her settlement with DaimlerChrysler . . . until March 8, 2002. . . .

(Some emphases added and some in original.) (Some capitalization omitted.) Liberty Mutual cited the attached declaration of Chang, which, indeed, propounded that he spoke with Kawatachi on January 8, 2002 and informed her "that [the] offset discussed in . . . *Dizol* . . . may be applicable to . . . Z[ane]'s claim."

### 2. *The hearing in the circuit court*

At the circuit court's June 4, 2003 hearing, Zane conceded the general principle of the *Taylor* rule, *see supra* note 2; however, she urged that DaimlerChrysler was not an actu-

---

8. Young presumably means either "and the rea- sons" or "the reason being."

al tortfeasor in light of the "nuisance value" of its settlement payment and that, consequently, its self-insurance was not "applicable," *see* HRS § 431:10C–103, *supra* note 1, to the *Taylor* offset:

[ZANE:] . . . *Taylor* held that a credit is due the [UIM] carrier for the difference in the amount of the settlement paid and the policy limits of the [UIM] tort[ ]feasor. . . .

And we don't have a problem with that. . . .

But what is a tort[ ]feasor? A tort[ ]feasor is—. . . and this is a definition out of Black[']s [Law Dictionary]—a wrongdoer, an individual or a business that commits or is guilty of a tort.

Now, . . . [n]one of the parties here could establish any wrongdoing or a tort that [Daimler]Chrysler was guilty of.

. . . .

And none of those parties could develop a viable product liability claim against [Daimler]Chrysler. And that is undisputed. . . . Therefore, [Daimler]Chrysler was not a tort[ ]feasor. And not being a tort[ ]feasor, *Taylor* simply doesn't apply when it speaks of a credit that's due for the policy limits. . . .

. . . .

. . . *Vassiliu [v. Daimler Chrysler Corp.,* 356 N.J.Super. 447, 813 A.2d 547 (2002), *rev'd in part on other grounds,* 178 N.J. 286, 839 A.2d 863 (2004),] . . . discuss[ed] the situation where . . . a party has no liability[.] And . . . when you speak of available insurance, you speak of available insurance for . . . actual, responsible tort[ ]feasors, as opposed to parties that don't have liability or responsibility.

. . . *Mulholl [and]* comes to the same conclusion, that when you talk about a credit, you are talking about a credit against an actual tort[ ]feasor.[9]

And *Mulholl [and]* actually discusses . . . the situation where a plaintiff files suit initially against everybody that might be involved. . . . [A]s the case goes on and it is determined that there is no liability against certain parties, . . .

. . . that's okay. . . . Because the alternative . . . is that the plaintiff only sues the most liable one. And the UIM carrier then loses its subrogation rights against all the other potential tort[ ]feasors. . . .

By suing everyone initially, . . . the plaintiff actually ends up protecting the subrogation rights of the UIM carrier against all potential tort[ ]feasors. And then . . ., you sort out the liability. . . .

THE COURT: . . . Are you saying that you have to have a judgment?

[ZANE]: No.

. . . .

. . . [I]ssues of liability . . . are under UIM policies the subject of arbitration. . . .

So . . . if the parties disagree whether the compromise was due to just simply wanting to forgo the expenses of litigation, or whether it was a liability question, that would be an issue for arbitration. Although I think in most cases that becomes pretty obvious. Where you sav[e] 5,000 [dollars] off the policy, . . . that's being done for convenience.

Where you tak[e] five percent of the policy, . . . obviously there are some liability questions.

Zane then broached the issue of Liberty Mutual's representations, if any, concerning its intention to forgo the *Taylor* credit:

In this case, [Zane] ha[s] from day one been very specific about what was consented to. *Full disclosure was made to Liberty Mutual that this is a situation of no liability.* . . .

We were taking $200,000. And *to make sure we didn't get in that Taylor bind of then not being able to collect,* we simply went to [Liberty Mutual] and said look, this is the situation. We want your consent to this, so that we can *proceed with the UIM claim.*

. . . .

. . . [I]n [its] reply memorandum Liberty Mutual has attached the declaration of the adjuster himself who participated throughout the entire proceeding. . . .

9. *But see infra* section III.C.4.b.

... [It] says only that sometime in January he talked to ... [Zane]'s lawyer and brought up the *Dizol* case....

... And what's really telling about this affidavit is not what it says, but what it doesn't say.

This affidavit doesn't say no, I never agreed with [Zane]'s lawyer when he called me in [sic] December 20th ... that this settlement was for nuisance value....

(Emphases added.) Liberty Mutual responded that

DaimlerChrysler is a joint tort[ ]feasor.... [U]nder our [U]niform [C]ontribution [A]mong [T]ortfeasors [A]ct[, HRS ch. 663, pt. II (Supp.1999) (UCATA),[10] it's not necessary that a judgment or ... a[n] ultimate finding of liability be made in order for a party to be determined to be a joint tort[ ]feasor.

. . . .

... [T]he parties reached a settlement in the amount of $200,000.... But ... reasonably speaking it cannot be determined that a $200,000 settlement is a nuisance value settlement.

. . . .

... The injuries in this case were indeed high. But nuisance value does not depend necessarily on the injuries.... [N]uisance value is a case in which there is no liability and the defendant merely throws some money on the table. In other words, notwithstanding the finding of liability. [sic— presumably, "notwithstanding the *lack* of a finding of liability]

And ... in this case the amount of the settlement, as well as the fact of the settlement itself, confirm[ ] DaimlerChrysler's position as a joint tort[ ]feasor.

. . . .

... [F]or example, ... in [*Gump v. Wal–Mart Stores,* 93 Hawai'i 417, 5 P.3d 407 (2000) ], M[ ]cDonald's, the settling defendant, was considered to be a joint tort[ ]feasor, even though there was no ultimate finding of liability....

... [T]hey did make a settlement. And in the Court's view that confirmed their status as a joint tort[ ]feasor.... [U]nder HRS[ § ] 663–11[ [11] ] the definition of a joint tort[ ]feasor again does not turn on the ultimate finding of liability or nonliability. What it basically states is that a party can be deemed to be a joint tort[ ]feasor, whether or not judgment is recovered against all or some of the tort[ ]feasors in the case.

. . . .

... [Zane] did request that Liberty Mutual consent. That's undisputed. It is undisputed that Liberty Mutual consented *to the settlement.* ...

. . . .

The reason why we attached [Chang's declaration to our May 30, 2003 reply] ... is that in [her May 27, 2003] memorandum in opposition *what [Zane] was arguing ... was that [she] didn't know about* this [ (*i.e., the Taylor/Dizol rule* ) ] before they finalized the settlement.

... *Liberty Mutual was not required to advise them of the applicable law.*

. . . .

... If [Zane] is [making an estoppel claim], ... it's simply not supported on the record before the Court. And any reliance by [Zane]—for one thing, *there was no representation made by ... Chang that he would not be asserting a credit.* Silence cannot create an estoppel. And ... any reliance upon that wouldn't.

. . . .

... Under *Taylor* [it] is simply not our place to object to the settlement. And *Taylor* strongly advises [UIM] insurers to consent to settlement. And we did that in this case.

---

10. Effective June 28, 2001 and June 4, 2003, the legislature amended the UCATA in immaterial respects. *See* 2003 Haw. Sess. L. Act 146, §§ 1 and 4 at 343–44; 2001 Haw. Sess. L. Act 300, §§ 3, 4, and 7 at 876–77.

11. HRS § 663–11 (1993), entitled "Joint tortfeasors defined," provides: "For the purpose of [the UCATA,] the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

... [B]ut ... it would be counter-intuitive ... to suggest that every time a[UIM] insurer consents to a settlement[,] ... that would foreclose it from asserting the credit and the offset[ ]....

....

... I believe that [*Taylor*] did everything but sa[y] that you have to consent. But I think what they were trying to do again is to encourage [UIM] insurers to consent, so that they would not get in the way of an underlying [BI] settlement.

(Emphases added.) Liberty Mutual emphasized that "the *Taylor* credit"—*i.e.*, the insured's waiver of the difference between the settlement amount and the "applicable" BI limits—

applies irrespective of whether or not [the insurer's] consent is obtained.... [B]ecause that's the exact thing that they were trying to encourage by giving the carriers the credit on the back hand. And what they wanted to tell the carrier is there is no reason for you not to continue as long as you get the credit on the back hand.
... It is undisputed that Liberty Mutual consented to the settlement.... Our only point is that we should be entitled to the full credit ... under ... *Dizol* ....

Nevertheless, the circuit court ruled that

the purpose of getting the consent, which was made known to Liberty Mutual, was so that the credit would not kick in. And no one's argued to the Court, and the Court does not find, that even if you are entitled to the credit that you can't give it up. And the Court finds that they did.... [U]nder the peculiar, undisputed facts of this, the consent constituted not only a consent but also a waiver of any claim to a credit beyond the 200,000[ dollars].

Accordingly, the circuit court granted summary judgment in Zane's favor and against Liberty Mutual:

Liberty Mutual would have been entitled to a credit for joint tortfeasor Daimler-Chrysler ..., in connection with the underlying accident, but, having consented to the liability settlement with DaimlerChrysler, Liberty Mutual may not now object to that settlement as a basis for denying [UIM] benefits, and ... may not now claim said credit and[,] accordingly, the. Court grants ... Zane's Motion for Summary Judgment and denies ... Liberty Mutual's Motion for Summary Judgment.

Issues relating to the liability of ... Kim or ... Zane's damages may be submitted to arbitration....

The circuit court's April 25, 2005 judgment effectively "ordered Liberty Mutual to provide full ... UIM[ ] coverage benefits to Zane, without any credit/offset for ... self-insurance applicable to ... DaimlerChrysler[ ]." *See* op. at 62–63, 165 P.3d at 963–64.

### D. *Proceedings On Direct Appeal*

On direct appeal, Liberty Mutual noted Chang's May 30, 2003 declaration, *see supra* section I.C.1, and argued that the circuit court erroneously "equat[ed] Liberty Mutual's ... consent to the liability settlement ... with the substantively different proposition that [it] waived its rights to" invoke the *Taylor* rule:

In order to sustain such an estoppel, [Zane] bears the burden of showing that (1) Liberty Mutual engaged in an affirmative representation or conduct, (2) [Zane] detrimentally relied upon that affirmative representation or conduct, and (3) such reliance was reasonable.[ 12]

... [Zane] can point to no *affirmative* representation or conduct by Liberty Mutual specifically indicating that such an offset or credit would *not* apply and, since Liberty Mutual communicated its intent to assert this offset/credit *before* the finalization of [Zane]'s DaimlerChrysler settle-

---

12. As a general matter, we believe Liberty Mutual correctly describes the elements of equitable estoppel. "[T]he party invoking equitable estoppel must show that 'he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable. Such requirement, however, may be dispensed with in order to prevent manifest injustice.' " *AIG Haw. Ins. Co. v. Smith*, 78 Hawai'i 174, 179, 891 P.2d 261, 266 (1995) (emphasis and citations omitted) (quoting *Doherty v. Hartford Ins. Group*, 58 Haw. 570, 573, 574 P.2d 132, 134–35 (1978)), *quoted in State Farm Mut. Auto. Ins. Co. v. GTE Hawaiian Tel. Co.*, 81 Hawai'i 235, 244, 915 P.2d 1336, 1345 (1996).

ment, any reliance by [Zane] upon the absence of such a representation or affirmative conduct would have been unreasonable....

.... 

Liberty Mutual heeded *Taylor* and consented to [Zane]'s underlying settlement and should not be penalized for doing what *Taylor* told it to do....

(Emphases in original.) (Internal quotation signals and some capitalization omitted.) (Citing *County of Kaua'i v. Scottsdale Ins. Co.*, 90 Hawai'i 400, 403 n. 1, 978 P.2d 838, 841 n. 1 (1999).) In its reply brief, Liberty Mutual emphasized that a representation by a party that may give rise to a waiver or an estoppel " 'must be clearly made to appear' " and " 'leave no opportunity for a reasonable inference to the contrary.' " (Emphasis omitted.) (Quoting *Anderson v. Anderson*, 59 Haw. 575, 587, 585 P.2d 938, 945 (1978); *Hewahewa v. Lalakea*, 35 Haw. 213, 220 (1939).)

In her answering brief, Zane cited Young's May 27, 2003 affidavit and reiterated her position that Liberty Mutual's consent to her settlement with DaimlerChrysler waived its entitlement to invoke the *Taylor* rule.

In *Zane I*, the ICA first addressed the estoppel question. The ICA concurred with Liberty Mutual that, on the present record, its conduct did not give rise to estoppel as a matter of law:

[T]here are genuine issues of material fact regarding (1) whether Zane relied on Liberty Mutual's consent; (2) if Zane relied on Liberty Mutual's consent, whether Zane reasonably understood said consent to mean that Liberty Mutual would not assert its right to a credit/offset; and (3) if Zane relied on Liberty Mutual's consent, whether Zane's reliance was reasonable, given that Liberty Mutual claims it notified Zane of its intention to assert its right to a credit/offset prior to the finalization of Zane's settlement with DaimlerChrysler.

Slip op. at 17. Specifically, with respect to the reasonableness of any reliance by Zane, the ICA noted that, "[i]n her Complaint, Zane claimed that '[a]lthough Liberty Mutual was itself involved in the [BI] liability suit, Zane nonetheless went through the formality

of requesting written permission to settle the liability claims *in order to preserve [UIM] benefits.*' " *Id.* at 19 (emphasis in *Zane I*) (some brackets added and some in original). The ICA seems to have implied that this statement, as well as the "[a]dmitted [f]act[ ]" that "Liberty Mutual consented to the liability settlement with DaimlerChrysler and may not now object to that settlement as a basis for denying [UIM] benefits," *see supra* section I.C.1, is subject to multiple interpretations. *See* slip op. at 19–20. Moreover, the ICA recognized an unresolved genuine issue of material fact concerning the existence and content of alleged communications between Chang and Kawatachi. *See id.* at 20–21. Accordingly, the ICA held that "the circuit court erred by ... holding that Liberty Mutual was estopped from asserting its right to a credit/offset." *Id.* at 21 (emphasis omitted).

Nonetheless, the ICA deemed the circuit court's error to be "harmless" inasmuch as Liberty Mutual was not "entitled to an offset for the 'gap' referred to in *Taylor* and *Dizol* ... because DaimlerChrysler was not an actual tortfeasor." *See id.* The ICA acknowledged that this court

wrote in *Taylor* ..., 90 Hawai'i [at] 314, 978 P.2d [at] 752 ..., that "[b]y settling for less than policy limits, the UIM insured agrees to forego compensation for the difference between the settlement amount and the tortfeasor's liability policy limits." This means that the "UIM carrier will not be responsible for covering that 'gap' as a component of its obligation to compensate its insured for injury and damage exceeding the tortfeasor's policy limits." *Id.* Additionally, the United States District Court ... explained in *Dizol* ... that "a UIM carrier has a statutory right to be contractually liable to indemnify its insured only for the amount in excess of the tortfeasor's liability coverage." ... 176 F.Supp.2d at 1031....

Slip op. at 14, 21–22. However, the ICA agreed with Zane that DaimlerChrysler was not a tortfeasor: "*Black's Law Dictionary* 1497 (7th ed.1999) defines 'tortfeasor' as '[o]ne who commits a tort; a wrongdoer.' In the instant case, Judge McConnell did not

find DaimlerChrysler to be liable to Zane or, in other words, a tortfeasor." *Id.* at 22 (brackets in original). The ICA essentially accepted at face value Zane's characterization of DaimlerChrysler's settlement amount as "nuisance value" and concluded that, as a matter of *law*, DaimlerChrysler was not a tortfeasor because of the "undisputed" facts that:

(1) Discovery and case preparation did not support a viable product liability claim against DaimlerChrysler.

(2) Because no viable basis for liability existed, the product liability claim against DaimlerChrysler could not be successfully resolved.

(3) The best that Judge McConnell could achieve was a mediated settlement for a "nuisance value" payment of $200,000 by DaimlerChrysler....

(4) Young recommended to Zane that she accept the mediated settlement because there was no viable product liability claim against DaimlerChrysler and no reasonable prospect of recovering more from DaimlerChrysler at trial.

(5) Young spoke to Chang and fully advised Liberty Mutual of the facts of the settlement and the circumstances requiring abandonment of the product liability claim for a nuisance value settlement of $200,000 ..., and Young requested consent to the liability settlement without prejudicing Zane's right to payment of UIM benefits.

Furthermore, there is nothing in the record on appeal indicating that DaimlerChrysler was liable to Zane for the accident.

*Id.* at 24–25. In short, the ICA adopted Zane's position that the maximum "applicable" coverage beneath which an insured is not entitled to UIM benefits does not include the BI coverage of a party who has settled

with the insured but is not an "actual tortfeasor," viewing "actual tortfeasor" to mean a defendant who has undergone the " 'equivalent [of] an adjudication of liability through litigation or arbitration.' " *See id.* at 22, 23 & n. 5, 24 (quoting *Vassiliu,* 813 A.2d at 553; *Arenson,* 665 A.2d at 396–97; *Allstate Ins. Co. v. Dejbod,* 63 Wash.App. 278, 818 P.2d 608, 611–12 (1991)).

Finally, the ICA held that Liberty Mutual *was* entitled to a $200,000.00 offset representing DaimlerChrysler's actual settlement proceeds, contrary to the circuit court's conclusion.[13] *See id.* at 27. On that basis, the ICA vacated and remanded the circuit court's April 25, 2005 judgment for further proceedings. *See id.*

On January 23, 2007, Liberty Mutual timely filed the present application for a writ of certiorari. On February 6, 2007, Zane filed her timely response. On April 16, 2007, we handed down an opinion in this matter (*Zane II* ). On April 25, 2007, Zane moved for reconsideration, after which we vacated *Zane II,* ordered that it remain unpublished, and replaced it with this amended opinion.

## II. *STANDARD OF REVIEW*

▮ We review the circuit court's grant or denial of summary judgment *de novo. Hawai'i C[m]ty[.] Fed[.] Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements

---

**13.** The ICA noted that, based upon the language of its UIM policy, Liberty Mutual's UIM coverage " 'appl[ied] over and above all sums ... [p]aid because of the bodily injury by or on behalf of persons or organizations who *may* be legally responsible.' " Op. at 75, 165 P.3d at 976 (some

emphases omitted and one in original) (some brackets added and some in original) (ellipsis in original). The ICA concluded that DaimlerChrysler "may" have "be[en] ... legally responsible" and, therefore, its payment of $200,000.00 to Zane entitled Liberty Mutual to a *pro tanto*

of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Querubin v. Thronas*, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004) (quoting *Simmons v. Puu*, 105 Hawai'i 112, 117–18, 94 P.3d 667, 672–73 (2004) (quoting *Kahale v. City & County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (quoting *SCI Mgmt. Corp. v. Sims*, 101 Hawai'i 438, 445, 71 P.3d 389, 396 (2003) (quoting *Coon v. City & County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002))))))).

## III. *DISCUSSION*

### A. *Introduction*

█ In its application for a writ of certiorari, Liberty Mutual argues that: (1) "any dispute as to DaimlerChrysler's status as a 'joint tortfeasor' was never properly before the ICA" inasmuch as Zane "did not file any cross-appeal" (quoting *Doe v. Doe*, 99 Hawai'i 1, 12–13, 52 P.3d 255, 266–67 (2002)); [14] (2) in any case, DaimlerChrysler *was* a joint tortfeasor for purposes of determining what coverage was "applicable" to Zane, as Zane conceded by naming it as a defendant in her own complaint; (3) regardless of any liability or lack thereof on the part of DaimlerChrysler, Zane, by settling with DaimlerChrysler, "for[went]" the recovery of any amount between the settlement figure and Daimler-Chrysler's BI limit (citing *Taylor*, 90 Hawai'i at 313, 978 P.2d at 751; *Dizol*, 176 F.Supp.2d at 1027–33); and (4) Liberty Mutual's assent to the settlement did not "give rise to an estoppel" (citing, *e.g.*, *Enoka v. AIG Haw. Ins. Co.*, 109 Hawai'i 537, 558, 128 P.3d 850, 871 (2006); *Broida v. Hayashi*, 51 Haw. 493, 464 P.2d 285 (1970); *Nationwide Mut. Fire Ins. Co. v. Salkin*, 163 F.Supp.2d 512 (E.D.Pa.2001); *Fickbohm v. St. Paul Ins. Co.*, 133 N.M. 414, 63 P.3d 517 (N.M.Ct.App. 2003); *Liberty Mut. Ins. Co. v. Staltare*, 236 A.D.2d 539, 654 N.Y.S.2d 154 (1997); *Safeco Ins. Co. v. Woodley*, 102 Wash.App. 384, 8 P.3d 304 (2000); *Eklund v. Farmers Ins. Exch.*, 86 P.3d 259 (Wyo.2004)). (Some capitalization omitted.)

We agree with the ICA that the parties' filings produced genuine issues of material fact as to Liberty Mutual's representations, if any, to Zane, not to mention the existence and reasonableness of her reliance on any such representations. However, we believe that the ICA erred in adopting Zane's position that DaimlerChrysler was not a tortfeasor for *Taylor* purposes because it settled for "nuisance value."

### B. *The Estoppel Question—i.e., Whether Liberty Mutual Represented To Zane That It Would Not Rely On The Taylor Rule—Turns On Unresolved Genuine Issues Of Material Fact.*

█ Based upon the evidence proffered by the parties in their filings in the circuit court, summary judgment was premature. On the one hand, Zane alleged in her complaint, and Liberty Mutual admitted, that Liberty Mutual "consented to the liability settlement." *See supra* section I.C. On the other hand, that admission, in and of itself, does not establish a patent waiver of Liberty Mutual's entitlement to a *Taylor* credit for Daimler-Chrysler's self-insurance in excess of $200,000.00. Liberty Mutual's admission that it "may not now object to th[e] settlement as a basis for denying [UIM] benefits" is subject to differing interpretations. *Taylor* admonishes that a UIM insurer may not

credit. *Id.* Zane does not contest this aspect of the ICA's decision, and we agree with it.

**14.** This point is meritless. Zane was hardly aggrieved by the circuit court's adoption of her position. We cannot imagine why Zane would or should have anticipated the need to challenge on cross-appeal the circuit court's *dictum* that the *Taylor* rule would have favored Liberty Mutu-

al were it not estopped. In any case, while, "[o]rdinarily, an appellee is not entitled on appellate review to attack a judgment without a cross appeal[,] ... '[it] seems that no cross appeal is necessary [to] review a question closely related, in substance, to a question raised by the appeal.' Certainly, what is [sauce] for the goose is ... [sauce] for the gander." *Shoemaker v. Takai*, 57 Haw. 599, 607, 561 P.2d 1286, 1291 (1977).

withhold consent simply to coerce its insured into either trying her case or abandoning her UIM claim. As we insinuated in oral argument, Liberty Mutual's admission, phrased, as it is, in these particular words, could reasonably be taken to mean: "Liberty Mutual acknowledges that, pursuant to *Taylor*, it cannot withhold *all* UIM benefits on the 'basis' that Zane breached our contract by settling without exhausting 'applicable' BI coverage." *See Taylor*, 90 Hawai'i at 314, 978 P.2d at 752. The negative implication would be: "Nevertheless, Liberty Mutual can still discount a portion of Zane's UIM benefits on another 'basis,' to wit, the gap between the settlement amount and DaimlerChrysler's limit." *See id.* That the discounted "portion" happens to equate to *all* of Zane's benefits in this particular case, because of DaimlerChrysler's deeply insured status, is mere happenstance.

Similarly, assuming *arguendo* the admissibility of the statements in Young's May 27, 2003 affidavit, Chang's having "underst[ood] the situation" and "consent[ed] to settlement . . . as discussed" do not definitively resolve the dispute in Zane's favor when compared to Liberty Mutual's version of the material facts, to wit, that Chang had alerted "Kawatachi that [the] offset discussed in . . . *Dizol* . . . may be applicable to . . . Z[ane]'s claim." Given the genuine issues of material fact, we hold that summary judgment was wrongly entered.

In short, the parties' "pleadings . . . and admissions on file, together with the affidavits," did not "show that there is no genuine issue as to any material fact and that [either] party [wa]s entitled to a judgment as a matter of law." *See* Hawai'i Rules of Civil Procedure Rule 56(c). Further proceedings in the circuit court are necessary to ascertain (1) whether Liberty Mutual's conduct constituted a representation that it would not attempt to reduce Zane's UIM claim by any unpaid portion of DaimlerChrysler's BI coverage and (2) whether Zane reasonably and detrimentally relied thereon.

**C. The Only Argument That Zane Properly Preserved To Rebut Liberty Mutual's Assertion Of The Taylor Offset—i.e., That The Parties Agreed That Daimler-Chrysler Was Not Liable—Is Meritless**

**1. Introduction**

Essential to our framing of the remaining point of error is the particular language with which Zane contested the "applicab[ility]" of DaimlerChrysler's insurance to the *Taylor* offset. In her motion for reconsideration, she advances a theory that she previously did not assert in her appellate briefing, to wit, that DaimlerChrysler's coverage is not "applicable" because DaimlerChrysler was not an owner or operator of one of the vehicles in the collision. Whereas Zane arguably hinted at this alternative argument before the circuit court,[15] on appeal she did not rely on it and asserted instead that, inasmuch as DaimlerChrysler was not liable in *any* capacity, its insurance did not apply to the *Taylor* gap.

Because the thrust of Liberty Mutual's appeal was the circuit court's finding of estoppel, we would not expect Zane to anticipate that the ICA would disturb the circuit court's decision as to the appropriate *Taylor* credit. Nevertheless, she willingly ventured into the question of DaimlerChrysler's applicability under *Taylor*, and did not contend in the alternative that DaimlerChrysler was not an owner or operator. Accordingly, we address only the question before us: whether the term "tortfeasor," as employed in *Taylor*, could include a codefendant who has settled for only the estimated costs of litigation. If (1) the fact that DaimlerChrysler is apparently free of "actual" fault absolves it of "tortfeasorship" in the *Taylor* sense, we must deem DaimlerChrysler's BI coverage to be excluded from the *Taylor* gap; if, on the other hand, (2) the mere fact that DaimlerChrysler settled for nuisance value—if that is what happened—does not render it a nontortfeasor for *Taylor* purposes, Liberty Mutual would, without more, be entitled to offset Zane's UIM claim with DaimlerChrysler's

---

**15.** In reply to Liberty Mutual's objection that Zane "is . . . raising this argument for the first time on this appeal," Zane notes that, "in [her] opposition to Liberty Mutual's motion for summary judgment in the [circuit] court," she "raised these arguments." (Citing Mem. in Opp. to Mot. for Summary J. at 13.)

forgone "limitless" BI coverage. Inasmuch as Zane restricted her argument to the definition of a "tortfeasor" for *Taylor* purposes, we do not confront the question whether the *Taylor* gap envelops the BI insurance of even non-owner/operators.

### 2. *Zane's only argument on appeal*

In Zane's answering brief, she argued in pertinent part that DaimlerChrysler's BI coverage was not "applicable" because DaimlerChrysler was not a tortfeasor:

Liberty Mutual cites cases for the proposition that the liability policies of all parties, whether liable or not, should be considered in the credit.... [T]he cases cited do not apply because they do not involve ... contribution by a non-liable party.

. . . .

. . . *Delahoussaye[ v. Madere,* 733 So.2d 679 (La.Ct.App.1999) ], did not give any credit for ... a non-liable ... party's policy limits.

. . . .

. . . [The defendant] Belcher's payment and policy limits, as [those of] a non-liable party, w[ere] totally excluded by both trial and appellate courts....

. . . .

Liberty Mutual cites *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983)[,] and *Johnson v. Am[.] Family Mut[.] Ins[.] Co.,* 426 N.W.2d 419 (Minn.1988)[,] for the proposition that it is entitled to a credit for even non-liable parties. Neither case supports that claim....

. . . .

It makes no sense to require Zane to forego the ... contribution from DaimlerChrysler ... where it was obvious that [it] was truly for nuisance value....

. . . .

. . . Liberty Mutual's contention that Zane [should] be required to pursue a non-liable party conflicts with *Taylor's* rationale.... It is implicit from the context and reasoning ... that the court's reference to

recovery of the "tortfeasor's liability coverage" refers to a tortfeasor that is liable to the plaintiff. It seems academic that one who is not liable to the plaintiff is by definition not a "tortfeasor."

. . . .

Liberty Mutual's policy requirement to exhaust insurance policy limits applies only to "applicable" policies.... DaimlerChrysler's policy was not applicable because there was no liability.

. . . . [I]nsurance coverage of parties that are not liable are simply not "applicable" to the loss and do not violate Liberty Mutual's provision requiring exhaustion of applicable liability policies.

(Citation omitted.) Then, in her response to Liberty Mutual's cert application, Zane argued:

Liberty Mutual does not challenge the undisputed fact that discovery and case preparation did not support a claim against DaimlerChrysler (hence *DaimlerChrysler was not a tortfeasor*).... The ICA's conclusion that *DaimlerChrysler was not legally responsible for Zane's injuries* is clearly supported....

. . . [T]he ICA decision was based on the fact that all parties agreed that *DaimlerChrysler was not a tortfeasor* after discovery and case preparation failed to develop a viable theory of liability against DaimlerChrysler.

. . . .

. . . [U]nlike ... *Taylor,* in the instant case it was undisputed that DaimlerChrysler[ ] was *not* legally responsible for Zane's injuries and[,] thus, *not a tortfeasor.* Therefore, Da[im]lerChrysler's insurance was not less than its liability ... because it was *not liable* ....

. . . .

. . . "A party is liable within the meaning of [HRS § ] 663–11[, *see supra* note 9,] if the injured person could have recovered damages in a direct action against that party[ ] had the injured person chosen to

pursue such an action." *Gump* ..., 93 Hawai'i [at] 422, 5 P.3d [at] 412....

(Some emphases added and one omitted.) (Heading omitted.) (Quoting *Zane I* at 24.) In sum, Zane represented on appeal [16] that DaimlerChrysler's BI coverage did not apply to the *Taylor* gap because DaimlerChrysler, having settled for what the parties agree was nuisance value rather than a liquidation of "actual" fault, was not a tortfeasor for purposes of the *Taylor* rule.

### 3. *Zane's asserted basis for reconsideration*

 In her motion for reconsideration, Zane attempts to recast her position on appeal as being that DaimlerChrysler was not an owner or operator of an underinsured motor vehicle. Citing (for the first time ever) *State Farm Mut. Auto. Ins. Co. v. Motley*, 909 So.2d 806, 809, 818–21 (Ala.2005), Zane argues that, inasmuch as (1) she implicated DaimlerChrysler as a defendant upon a theory of products liability, and (2) DaimlerChrysler was not an owner or operator of a motor vehicle, DaimlerChrysler's funds "have nothing to do with motor vehicle insurance," whereas HRS §§ 431:10C–103 and –301(b)(4) (Supp.1998) [17] "expressly and exclusively refer[ ] to *motor vehicle* [BI] insurance and *motor vehicle* self-insurance." Zane adds that, pursuant to *Kang v. State Farm Mut. Auto. Ins. Co.*, 72 Haw. 251, 815 P.2d 1020 (1991), Thomas's vehicle, in which Zane rode, was not an underinsured motor vehicle, inasmuch as Zane was covered by Thomas's BI policy and cannot simultaneously recover from his UIM insurance. In essence—from Zane's newly resurrected perspective—, DaimlerChrysler was not an owner or operator of any vehicle, let alone an underinsured one, and its BI insurance is not "applicable" within the meaning of HRS § 431:10C–103. We believe this argument to be belated and, accordingly, waived for purposes of this appeal. There is no reason why Zane could not have asserted this theory as an *alternative* to the position that she actually raised—that a UIM insured cannot forfeit the BI coverage of a settling defendant that is not a tortfeasor. Indeed, she is free to raise it on remand.

---

**16.** In hindsight, we realize that, at oral argument, Zane may have alluded to her new argument, which we assumed was a reiteration of her general theory that, inasmuch as DaimlerChrysler was not "legally responsible," its self-insurance was not applicable:

[Zane:] ... In our argument below, we said [the *Taylor* credit] didn't apply in this particular case for several reasons. Number one, the policy itself distinguished how you handle the policy limits of a[UIM] and of anybody else. As to the [UIM] the policy is very specific. The policy says (and in this case the [UIM] would have been ... Kim), ... "We will pay under this coverage only after the limits of liability under any applicable [BI] liability bonds or policies have been exhausted by payment o[f] judgment[s or settlements]." That is in the "INSURING AGREEMENT" dealing with underinsured motor vehicle[s].—

[Justice Levinson:] Which is another way of framing, isn't it, the question whether Daimler-Chrysler's unlimited BI self-insurance was applicable or not?

[Zane:] ... No, because ... [the "LIMIT OF LIABILITY" section] ... applies to others.... And it says this: "Any amounts otherwise payable for damages under this coverage over and above all sums: 1. Paid ... by or on behalf of persons or organizations who may be legally responsible." (Emphasis omitted.)
...—

[Justice Levinson:] In other words, tortfeasors.

[Zane:] Correct. Non-auto tortfeasors. But there, you don't get a credit for the policy limit; you get a credit for the amount paid. So the policy itself sets up that distinction. And it's a very important distinction because you don't need to reach issues of waiver or tortfeasor[ status]....

MP3: Oral Argument, Hawai'i Supreme Court, 24:00 to 25:55 (Mar. 21, 2007), *available at* http://state.hi.us/jud/oa/07/SCoa032107—11amr. mp3. Nonetheless, it goes without saying that legal grounds raised for the first time in oral argument before the court of last resort are late to the dance. *See, e.g.,* Hawai'i Rule of Appellate Procedure 28(c) (concerning answering briefs); *Houghtailing ex rel. Steere v. De La Nux*, 25 Haw. 438, 444 (1920); *Hana Ranch, Inc. v. Kaholo*, 2 Haw.App. 329, 332–33, 632 P.2d 293, 295–96 (1981).

**17.** HRS § 431:10C–301(b) provides in relevant part:

A motor vehicle insurance policy shall include:
....
(4) Coverage for loss resulting from [BI] ... suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles....

4. *The fact that an alleged tortfeasor has settled for "nuisance value" does not, absent more, erase an insurer's right to offset its insured's UIM claim by an amount equal to the tortfeasor's forgone BI coverage.*

■ Having clarified the narrow scope of Zane's argument, we now proceed to answer the sole question she has preserved for our review: does the fact that a defendant has settled with the plaintiff for an amount that the parties agree represents only the costs of litigation and not a liquidation or compromised representation of liability, *absent more,* remove that defendant's BI coverage from the universe of insurance "applicable" as a *Taylor* offset? We answer the question in the negative.

In the event that the circuit court, on remand, rejects Zane's estoppel theory, we now provide guidance on the applicability of the *Taylor* rule under circumstances in which a settling defendant pays arguably negligible[18] consideration for its release. We conclude that the record did not enable the ICA to conclude as a matter of law that Daimler-Chrysler was not a tortfeasor for *Taylor* offset purposes.

a. *Taylor, Dizol, and Granger labeled the settling defendants "tortfeasors" notwithstanding the lack of adjudication.*

■ The inescapable implication of *Taylor* is that, in the context of a motor vehicle tort, it is the plaintiff's prerogative to settle with an alleged tortfeasor and thereby waive any UIM coverage of the gap between the compromise and the tortfeasor's BI limit. We believe that the choice of whether or not to settle with any particular defendant, with its consequent benefits and detriments, remains with the plaintiff even when discovery is fruitless. We disagree with Zane's implication that adjudication, arbitration, or admission of fault is a precondition of a *Taylor* offset. We agree with Liberty Mutual that,

where a UIM insured has settled with an alleged tortfeasor, the UIM insurer is not barred from discounting its financial responsibility for its insured's damages merely because the insured asserts that the defendant was not liable, regardless of (1) the defendant's "negligible" settlement amount and/or (2) the UIM insurer's consent to *the mere act of settling* (holding aside the estoppel controversy).

■ Zane's attempt to distinguish DaimlerChrysler from the alleged tortfeasors in *Taylor, Dizol,* and, by implication, *Granger,* is unpersuasive. In none of those cases was a single settling defendant actually adjudged to be factually liable, yet both this court and the *Dizol* court deemed the settling defendants to be "joint tortfeasors" *for UIM purposes.*[19] Many, if not most, settlement agreements contemplate that the settling defendant will be absolved of further liability to the plaintiff and the plaintiff's potential subrogee insurer. Nevertheless, we believe that a plaintiff/UIM insured who names a defendant and retains the defendant in the suit all the way to settlement assumes both the potential benefit of a defendant's ample insurance and the risk that the defendant's BI limit may far exceed the feasible settlement value; a defendant's settlement alone does not extinguish its "tortfeasor" status for purposes of offsetting a UIM claim. *Cf., e.g., Doe Parents No. 1 v. State, Dep't of Educ.,* 100 Hawai'i 34, 41, 55, 56 & n. 30, 87 n. 50, 58 P.3d 545, 552, 566, 567 & n. 30, 598 n. 50 (2002) (where trial court *dismissed* plaintiffs' claims against one of two codefendants before trial because the claims had earlier been discharged in bankruptcy, the dismissed party could not be a "joint tortfeasor").

b. *Dejbod, Vassiliu, and Mulholland*

The ICA erroneously relied on foreign authority that is dissonant with the *Taylor* line.

The Washington Court of Appeals's holding, in *Dejbod,* that "[t]he fact that a liability

---

18. We cannot help but notice that "negligible" does not roll off the tongue when one speaks of $200,000.00, almost twelve percent of a $1,690,000.00 settlement.

19. The *Dizol* court avoided the issue that now confronts us because "[i]t [wa]s *undisputed* that [the driver] and [the bar] were 'joint tortfeasors.'" *See* 176 F.Supp.2d at 1022 (emphasis added).

carrier voluntarily settles ... does not, without more, establish ... that [its] insured's [BI] policy is 'applicable' to the claimant," 818 P.2d at 612, is simply incompatible with *Taylor* and *Granger*, in which we contemplated the offset of settling defendants' entire BI limits despite the lack of any adjudication of fault. *Cf. supra* sections I.A and III.C.4.a.

In *Vassiliu*, the widow of the decedent UIM insured had sued (1) the driver of the other motor vehicle in the subject accident and (2) DaimlerChrysler, which was the manufacturer and seller of her husband's car. 813 A.2d at 549. The parties agreed that the plaintiff's burden against DaimlerChrysler revealed itself to be "insurmountable," and DaimlerChrysler "settled for $215,000.00 without concession of liability on its part." *Id.* at 550. The plaintiff sought a declaratory judgment against the decedent's UIM insurers for the full extent of the governing UIM policies. *See id.* at 550–51.

The defendant insurers argued that they were not obliged to cover any of the decedent's injuries inasmuch as the $215,000.00 payment from DaimlerChrysler exceeded the total UIM limits of $200,000.00. *Id.* at 551. The New Jersey Superior Court's Law Division disagreed, and the Appellate Division affirmed. *Id.* at 551, 552–53, 556. Construing a New Jersey statute similar to HRS § 431:10C–103's definition of an underinsured motor vehicle, *see supra* note 1,[20] the Appellate Division reasoned, in the portion of its opinion quoted by the ICA, slip op. at 23, that

> ["]when the statute ... speaks of 'available' insurance coverage, it plainly refers to that of persons who are actual responsible tortfeasors and not that of those who may have been 'involved' in the accident without being liable under the law. *To rule otherwise would lead to the result that [UIM] coverage would be eliminated whenever entirely blameless persons involved in an accident happen to be heavily insured.*["]

813 A.2d at 553 (emphasis added) (quoting *Gold v. Aetna Life & Cas. Ins. Co.,* 233 N.J.Super. 271, 558 A.2d 854, 857 (1989)).

The ICA overlooked a critical distinction from the present matter. After the settlement in *Vassiliu*, the remaining driver and the plaintiff proceeded to a bench trial. *Id.* at 550 & n. 2. The judge *adjudicated* liability with respect to the driver, allocating 100% of the fault to her; "[h]e found no evidence of fault on the part of [DaimlerChrysler]." *See id.* at 550.

Finally, Zane completely misapprehends *Mulholland.* That case concerned a UIM insurer's exhaustion clause, which provided that " 'there is no coverage until the limits of liability of all [BI] ... insurance policies ... that apply ... have been used up by payment of judgments or settlements.' " 122 Ill.Dec. 657, 527 N.E.2d at 35 (emphases omitted). An Illinois trial court had construed the term "apply" narrowly, *i.e.,* such that an insured need not exhaust the coverage of tortfeasors against which " 'a reasonably viable cause of action' " did not exist. *Id.* at 35–37.

The Illinois Appellate Court disavowed, at least in *dictum,* the lower court's analysis to which Zane alluded in the June 4, 2003 hearing. The appellate court balked at the practical difficulty of "pretry[ing] the case and rul[ing] on the ... reasonabl[e] viab[ility]" of a claim, but affirmed on unrelated grounds, to wit, that "the exhaustion clause ... is against public policy and therefore unenforceable," *accord Taylor,* 90 Hawai'i at 312, 313 & n. 10, 978 P.2d at 750, 751 & n. 10. *See* 527 N.E.2d at 37, 40–41.

#### c. *Gump*

In addition to *Taylor, Dizol,* and *Granger, Gump* illustrates that we have applied the term "joint tortfeasor" to erstwhile defendants whose fault was never adjudicated. In that case, the plaintiff "slipped on a french

---

**20.** N.J. Stat. Ann. § 17:28–1.1.e(1) provides in relevant part:

> A motor vehicle is underinsured when the sum of the limits of liability under all [BI] and property damage liability bonds and insurance policies *available* to a person against whom recovery is sought for [BI] or property damage is, at the time of the accident, less than the applicable limits for [UIM] coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.
> (Emphasis added.)

fry outside [a] McDonald's restaurant but inside the premises of Wal–Mart and sustained injuries. The restaurant [wa]s located inside the ... Wal–Mart." 93 Hawai'i at 419, 5 P.3d at 409. The plaintiff released McDonald's pursuant to settlement, but proceeded to trial against Wal–Mart. *Id.* After "[t]he jury ... apportioned liability 95% to Wal–Mart and 5% to" the plaintiff and awarded damages, Wal–Mart moved for "a new trial in which McDonald's [w]ould be included on the special verdict form." *Id.* The trial court denied the motion and Wal–Mart appealed. *Id.* On certiorari to the ICA, we ultimately upheld the trial court's omission of McDonald's from the special verdict form inasmuch as Wal–Mart had not cross-claimed against McDonald's, but we agreed that McDonald's *was* a joint tortfeasor, on no other basis than its having been named as a defendant. *See id.* at 422–23, 5 P.3d at 412–13.

### d. *Summary*

An actual adjudication of fault is not a prerequisite to a party's qualification as a "tortfeasor" for purposes of the *Taylor* rule. Having elected not to proceed to an adjudication of DaimlerChrysler's fault, Zane bore the consequences of recovering any settlement amount, however "meager," from DaimlerChrysler. Moreover, a UIM insurer's consent to settlement, absent more, does not constitute a waiver of the *Taylor* "gap."

Still, the record on appeal reflects a genuine issue of material fact with respect to whether Liberty Mutual communicated to Zane that it did not consider DaimlerChrysler's self-insurance exceeding $200,000.00 to be a *Taylor* "gap." Inasmuch as the estoppel question was not ripe for summary judgment, we remand to the circuit court. On remand, the parties may, if they wish, file new motions for summary judgment on whatever supportable grounds they choose to assert.

### IV. *CONCLUSION*

We (1) vacate the ICA's opinion in *Zane I* and the judgments of the ICA and the circuit court and (2) remand to the circuit court for

further proceedings consistent with the foregoing analysis.

